Don B. **COOK**, Plaintiff-Appellee,

v.

**UNITED STATES ATTORNEY GEN-
ERAL**, Defendant-Appellant.

No. 73–1436.

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1974.

Rehearing Denied Feb. 11, 1974.

Roby Hadden, U. S. Atty., Tyler, Tex., Charles E. Myers, Asst. U. S. Atty., Beaumont, Tex., for defendant-appellant.

Alvin J. Bronstein, Washington, D. C., Jerry Bain, Tyler, Tex., Nancy Crisman, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

BROWN, Chief Judge:

The question is, must the Parole Board grant a *Morrisey*[1]-type revocation hearing to a parolee at the commencement of a new prison sentence imposed for a crime committed while on parole where a parole violators warrant has been issued but returned unexecuted pending completion of the intervening sentence? Reversing the District Court, we hold that the revocation hearing can be postponed.

1. Morrisey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484.

In 1966, while out on parole in Texas, under a federal bank burglary conviction,[2] Appellee was returned to federal custody under two charges of post office burglary and one charge of burglary of a federally insured bank. On March 17, 1966 Appellee was released on $23,000 bond but was rearrested on March 28 on a charge of unlawfully attempting to enter yet another bank.

The following day the Parole Board issued a parole violators warrant charging Appellee with violating the conditions of his parole. The warrant was delivered to the United States Marshal for the Eastern District of Texas with instructions to (1) place a detainer if Appellee was apprehended by, and in custody of, local authorities and (2) to return the warrant unexecuted if the prisoner was sentenced on a new federal charge. The warrant was placed as a detainer against Appellee. Once again Appellee was prepared to make bond but decided not to when informed that the presence of the detainer would preclude his release in any event.

While in custody, Appellee was granted a preliminary interview with a United States probation officer pertaining to the issuance of the parole violators warrant. At this time, Appellee stated that he wished to fill out parole form 59(a) requesting a hearing before the Parole Board on return to a federal penal institution. The parole officer forwarded this request to the Parole Board.

On April 26, 1966 Appellee pleaded guilty to all four federal charges and received two five year sentences and one ten year sentence to run concurrently and one five year sentence to run consecutively. The five year consecutive sentence was suspended.

The parole violators warrant was not served on Appellee but was returned to the Parole Board unexecuted. This was not inadvertent but pursuant to earlier instructions to the Marshal and the apparently long established policy of the Parole Board. Appellee did not receive a revocation hearing on return to the federal prison nor thereafter although he repeatedly sought one.

The violators warrant was finally executed on March 30, 1972 on the eve of Appellee's completion of the service of his sentence at Leavenworth.[3] In March, May and July Appellee was informed that he would be afforded a revocation hearing before the Parole Board. The hearing was held in July but Appellee voluntarily declined to appear. Following the hearing the Parole Board issued a written order revoking Appellee's parole, and ordering him to serve the 1,170 days remaining under his original sentence (see note 2, *supra*).

The District Court granted the request for mandamus ordering Appellee discharged from custody concluding that the parole violators warrant was "technically" executed in 1966, that it was a denial of due process as a matter of law to delay the revocation hearing for six years in view of Appellee's numerous requests for an earlier hearing, and that the attempted execution of the warrant in March 1972 constituted a denial of due process and abuse of discretion by the Parole Board. Federal statutes and the precedent of this Circuit compel us to reverse.

■ In Morrisey v. Brewer, *supra*, the Supreme Court established that in order to comply with due process, the parolee is entitled to certain procedural safeguards before parole may be revoked. The parolee must be afforded a preliminary probable cause hearing when he is arrested for a parole violation and a more thorough revocation hearing [4] within a reasonable time after he is taken into custody.

---

2. At the time of his parole he had 1,170 days remaining to serve under his original sentence.

3. Appellee's certificate of mandatory release was dated June 13, 1972.

4. The parolee must be served written notice of the alleged parole violations, informed of the evidence against him, allowed to testify, present witnesses and documentary evidence, and allowed with certain qualifications to confront and cross-examine adverse

■ Even prior to *Morrisey* an opportunity for a parole revocation hearing was provided by federal statute [5] as well as by Justice Department regulations.[6] Where a hearing is required procedure must, of course, measure up to the due process requirements mandated by *Morrisey*.

The instant case raises a question of timing—that is *when* must the federal parole revocation hearing be held where the parolee has been returned to prison under an intervening conviction and the parole violators warrant has been returned unexecuted.

■ While a parole violators warrant must be *issued* within the maximum term of the sentence in accordance with 18 U.S.C.A. § 4205 [7] it need not be *executed* during this period. Instead, as we have many times declared, the warrant may be held in abeyance while the parolee serves sentence under an intervening conviction (the occurrence of which prompted the issuance of the violators warrant) and may then be executed fol-

---

witnesses. Furthermore, the hearing must be held before a neutral and detached party (such as the Parole Board) which must issue a written statement detailing the evidence it relied upon and the reasons that it revoked parole.

5. 18 U.S.C.A. § 4207 provides that

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof.

If such order of parole shall be revoked and the parole so terminated, the said prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced."

6. 28 C.F.R. §§ 2.40 and 2.41 provide:

"§ 2.40  Revocation by the Board.

A prisoner who is retaken pursuant to a warrant issued by the Board or a member thereof shall, while being held in custody under authority of such warrant awaiting possible return to a Federal institution, be afforded a preliminary interview by an official designated by the Board. Following receipt of a summary or digest of the preliminary interview, the Board shall afford the prisoner an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board. If the prisoner requests a local hearing prior to return to a Federal institution in order to facilitate the retention of counsel or the production of witnesses, and if he has not been convicted of a crime committed while under community supervision, and if he denies that he has violated any condition of his release, he shall be afforded a local revocation hearing reasonably near the place of the alleged violation (or one of the alleged violations if more than one is al-

leged). Otherwise, he shall be given a revocation hearing after he is returned to a Federal institution. Following the revocation hearing, the Board may then or at any time within its discretion revoke and terminate the order of parole or mandatory release or modify the terms and conditions thereof. Whenever a parole or mandatory release is thus revoked, the prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced, less such good time as he may earn following his recommitment."

[Parole Bd. Dir. No. 6, 35 F.R. 15288, Oct. 1, 1970]

"§ 2.41  Same; legal counsel and witnesses at preliminary interviews and revocation hearings.

Each alleged parole or mandatory release violator shall be advised that he may be represented by counsel and that voluntary witnesses who have information relevant and material may testify at the preliminary interview or the revocation hearing, or both, authorized by § 2.40: *Provided,* That the alleged violator arranges for the appearance of counsel and witnesses in accordance with procedures prescribed by the Board."

[Parole Bd. Dir. No. 1, 27 F.R. 8487, Aug. 24, 1962, as amended by Parole Bd. Dir. No. 2, 28 F.R. 10750, Oct. 5, 1963]

7. 18 U.S.C.A. § 4205 provides:

"A warrant for the retaking of any United States prisoner who has violated his parole, may be *issued* only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General *under said warrant,* and the time the prisoner was on parole shall not diminish the time he was sentenced to serve." (Emphasis added).

lowing completion of this intervening sentence. Smith v. Blackwell, 5 Cir., 1966, 367 F.2d 539; Galloway v. Attorney General, 5 Cir., 1971, 451 F.2d 357; Cox v. Feldkamp, 5 Cir., 1971, 438 F.2d 1; Williams v. United States Board of Parole, 5 Cir., 1970, 428 F.2d 1210; Clark v. Blackwell, 5 Cir., 1967, 374 F.2d 953; Buchanan v. Blackwell, 5 Cir., 1967, 372 F.2d 451.

■ A parole violators warrant is executed when its command is carried out —that is when the parolee is retaken and returned to federal custody pursuant to it.[8] But the return to federal custody must be by virtue of the parole violators warrant, not as was the case here, under the new intervening sentence for the recent crimes. See Johnson v. Wilkinson, 5 Cir., 1960, 279 F.2d 683.

■ Both statute and precedent confirm that *execution* of the warrant is the operative factor in triggering the availability of the revocation hearing. The hearing authorized by 18 U.S.C.A. § 4207 and 28 C.F.R. 2.40 is applicable to "a prisoner retaken upon a warrant."[9] And in Galloway v. Attorney General, 5 Cir., 1971, 451 F.2d 357, we explicitly recognized that the right to a federal parole revocation hearing does not accrue while the parolee is serving an intervening federal sentence where the parole violators warrant remains unexecuted.

■ Appellee was not "retaken upon the warrant" in 1966 since he was already in federal custody under the four charges to which he eventually pleaded guilty. Thus the warrant was returned

unexecuted, in accordance with the Parole Board's instructions. In an attempt to activate the § 4207 hearing requirement Appellee contends and the District Court held that the warrant was in fact "technically" executed since when filed as a detainer it effectively served the purpose of an executed warrant by preventing Appellee's release regardless of whether he made bond on the new charges. "Technically," however, we must conclude that the warrant was not executed in 1966 because Appellee was in fact held in custody pursuant to the four federal charges despite the subsequent lodging of the warrant as a detainer. The apparent futility of furnishing bond under these circumstances did not execute the warrant.

To hold otherwise would effectively vitiate Smith v. Blackwell, *supra,* and the cases which are binding on this panel that have expressly approved the Parole Board's common, if not standard, practice of deterring execution of the warrant until the intervening sentence has been served since the parolee will no doubt frequently be returned to custody pursuant to new federal charges prior to the issuance of the violators warrant.

■ We wish to emphasize that where the parole revocation hearing is deferred pending service of the intervening sentence, the parolee is not left without notice of the issuance of the violators warrant nor review of the propriety of its continued existence as a detainer.

■ Under 28 CFR 2.37(c)[10] the Board in its discretion may provide a

---

8. 18 U.S.C.A. § 4206 provides:
     "Any officer of any Federal penal or correctional institution, or any Federal officer authorized to serve criminal process within the United States, to whom a warrant for the retaking of a parole violator is delivered, *shall execute such warrant by taking such prisoner and returning him to the custody of the Attorney General.*"
     (Emphasis added).

9. See notes 5 and 6, *supra.*

10. 28 C.F.R. 237(c) provides:
     "(c) In those instances where the prisoner is serving in an institution on a new sentence, the warrant may be placed there as a detainer. The prisoner shall be advised that he may communicate with the Board relative to disposition of the warrant. Where the facts merit, the Board shall direct a Member or a designated examiner to conduct a dispositional interview at the institution where the prisoner is confined. At such disposi-

dispositional interview at the federal prison for a parolee who is serving an intervening sentence with an outstanding unexecuted violators warrant lodged as a detainer, at which time the continued propriety of the detainer may be challenged.[11]

While in custody under the federal charges prior to pleading guilty, Appellee requested and received an interview with a local probation officer pertaining to the presence of the violators warrant then lodged as a detainer.

Nor was Appellee's case that of the forgotten person. The written report filed by the Parole Board subsequent to the 1972 revocation hearing affirmatively states that Appellee's case was reviewed by the Board several times during the course of his intervening sentence.

We realize that our decisions approving the deferral of the revocation hearing while the parolee serves an intervening sentence predated *Morrisey*. In concluding that the deferral of the hearing did not deprive Appellee of any rights prescribed by *Morrisey*, we emphasize that Appellee has not shown that he was prejudiced by the delay.

■ The District Court found that "the refusal of the Parole Board to grant a parole revocation hearing upon the request of Don Cook and his attorney, and the inability of Don Cook to be released from incarceration as a result of the parole violator warrant, materially altered his course of action in the defense of other charges outstanding against him at the time." This finding will not withstand the modest scrutiny required by the clearly erroneous rule since it is simply not supported by the record. There literally was no, not just insufficient, evidence to show what if any courses of action were open or foreclosed. Indeed, to this day there is no suggestion of what Appellee could or would have done nor anything which detracts from the validity and consequence of the plea of guilty to the new charges which constituted irrefutable proof of the parole violation.

■ As contemplated by *Morrisey*, the Parole Board must make two separate determinations at the revocation hearing: (1) Whether the parolee has in fact violated a condition of his parole and (2) what action should be taken by the Board if such a violation has oc-

---

tional interview, the prisoner may be represented by counsel of his own choice and may call witnesses in his own behalf, provided that he bears their expenses. He shall be given timely notice of the dispositional interview and its procedure.

Note: Following the interview, the Board may take any action relative to the warrant appropriate under the statutes and regulations of the Board. The dispositional interview may be constructed as a revocation hearing in those cases where the Board does not withdraw its warrant but determines that the violator term shall begin to run concurrently with the new sentences then being served.

In all cases, including those where a dispositional interview is not conducted, the Board shall conduct reviews relative to disposition of the warrant. For its consideration, it shall request periodic reports from institution officials as required."

[Parole Bd. Dir. No. 5, 32 F.R. 15014, Oct. 31, 1967]

11. While serving his intervening sentence, Appellee requested but was not granted a

hearing until the sentence had practically expired. 28 CFR 2.37(c) provides that *"where the facts merit*, the Board shall direct a member or a designated examiner to conduct a dispositional interview at the institution where the prisoner is confined." The duty to provide a hearing under the regulation would appear to be discretionary to the extent that the Board must determine whether "the facts merit." Even if a hearing were required in all cases, however, the appropriate remedy for breach of the regulation would be to provide the parolee with a proper hearing—not to discharge him from further custody.

While it would be within the Board's discretion to grant a full § 4207/28 C.F.R. § 2.40–41 revocation hearing to a parolee serving an intervening sentence with a detainer lodged against him, the regulations do not impose such a duty on the Board. See notes 5, 6, and 9, *supra* and accompanying text. Nothing we have said should be construed to discourage the Board from holding the revocation hearing during the course of the intervening sentence if it deems such a procedure appropriate.

curred. 408 U.S. at 479–480, 92 S.Ct. at 2598, 33 L.Ed.2d at 493. In describing the nature of the revocation hearing in *Morrisey,* the Supreme Court expressly observed that "a parolee cannot reliti-́gate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." 408 U.S. at 490, 92 S.Ct. at 2605, 33 L.Ed.2d at 499.

Appellee did not even begin to demonstrate that he could have presented a stronger showing of mitigating circumstances supporting non-revocation had the hearing been held earlier. This is especially true in light of the fact that a formal hearing was finally held at which Appellee deliberately did not appear and in which the Board revoked parole. If after the expiration of the intervening sentences the Board concluded that revocation was called for there is no showing here that either the facts and circumstances or the attitude of the Board would have led to a different result had hearings been held earlier.

■ Appellee also contends that he was prejudiced during the term of his intervening sentence in that the presence of an unexecuted parole violators warrant serving as a detainer results in the deprivation of certain prison privileges such as trustee status and various educational opportunities. We are unable to conclude on this record that the extent of such deprivation is so great or so unreasonably related to the very existence of a detainer—based as it is in this case on a serious and incontestable parole violation—as to require that the revocation hearing be held at the commencement of the intervening sentence. See Lawrence v. Blackwell, N.D.Ga., 1969, 298 F.Supp. 708.[12]

Appellee also asserts that the deferral of the revocation hearing coupled with the presence of the detainer caused him great anxiety and interfered with the rehabilitation process since it is difficult for a parolee to become motivated while laboring under the uncertain prospect of further imprisonment following completion of his current sentence. We are simply unqualified, unauthorized, and unwilling to second guess the Parole Board on a matter so peculiarly within its own expertise.[13]

■ We do not close our eyes to the fact that Appellee may have been disadvantaged in certain respects by the deferral of the revocation hearing but we are unable to conclude that the disadvantage constitutes such a grievous loss—in due process terminology—as to require the hearing be held prior to service of the intervening sentence or to permit the intrusion by a Court into this highly discretionary activity.[14]

Underlying the District Court's decision was the proposition that the revocation hearing must be held within a reasonable time. *Morrisey,* in fact, recognized that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." 408 U.S. at 488, 92 S.Ct. at 2603, 33 L.Ed.2d at 498. It is important to realize, however, that in *Morrisey* the Court was confronted with parolees who had been returned to prison under *exe-*

12. We express neither approval nor disapproval of the detainer system as such.

13. We concur in the observation of Judge (now Chief Justice) Burger writing in Hyser v. Reed, 1963, 115 U.S.App.D.C. 254, 318 F.2d 225 at 242, cert. denied, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315:
"The functions of the Parole Board involve the application of blended concepts of criminology, penology, and psychology, and if the doctrine of 'administrative expertise' should carry weight anywhere it should do so in this area."

See Morrisey v. Brewer, 1972, 408 U.S. at 480, 92 S.Ct. 2593, 33 L.Ed.2d 484.

14. We take note that a District Court in the District of Columbia has recently held, in a case similar to the one before us, that *Morrisey* requires that a parolee returned to prison under a conviction for a crime committed on parole must be granted a parole revocation hearing within a reasonable period of time. Sutherland v. District of Columbia, DDC, 366 F.Supp. 270 [1973].

*cuted* warrants—not under new intervening convictions for admitted, serious crimes.

The District Court concluded that "the attempted execution of the parole violator warrant in March of 1972, more than six years after the issuance thereof, is a denial of due process as a matter of law and an abuse of discretion by the parole officials. Simon v. Moseley, 10 Cir., 1971, 452 F.2d 306 and McCowan v. Nelson, 9 Cir., 1970, 436 F.2d 758." As noted above our precedents clearly refute that conclusion. · Furthermore neither of the cases cited by the District Court supports its holding.[15]

As we have pointed out, Appellee received a full federal parole revocation hearing—which he declined to attend—prior to the revocation of his parole. He does not show that this hearing lacked any of the various ingredients required by *Morrisey*. Nor does, nor can, he show that the result would have been different had this hearing been held earlier. The District Court's discharge of Appellee from federal custody was unwarranted.

Finally, Appellee claims that he is entitled to credit under 18 U.S.C.A. § 3568 for the 25 days spent in jail between March 28, 1966 when he was rearrested and April 21 when he pleaded guilty during which time he was unable to obtain release from custody due to failure to make bond coupled with the presence of the detainer. Whatever the significance of the 1966 amendments to § 3568 (June 22, 1966, Pub.Law 89–465, 80 Stat. 217, 18 U.S.C.A. § 3568) he is not entitled to credit against his original sentence but only, at most, credit against the sentences for the new intervening crimes. Claims of this kind are best determined administratively so we express no opinion as to this.

Reversed.

---

15. *Simon* found a denial of due process where the Parole Board (due to a mistake pertaining to the length of the parolee's state sentence) failed to execute a parole violators warrant until three years after the parolee had been completely released from custody. The Court held that the Board must exercise due diligence in executing the warrant but may delay execution where there is a "good reason" for so doing.

The Court explicitly noted, however, that "incarceration in a state institution during the time the warrant remains unserved is such a 'good reason.'" 452 F.2d 309. In *Simon* the parolee happened to be serving an intervening state sentence. The same policy should be applicable, where as here, the parolee is serving an intervening federal sentence.

*McCowan* also recognized the importance of diligent execution of parole violator warrants but found no violation of due process in a two-year delay between issuance and execution of a California parole violators warrant where the parolee was answering charges in another state, California had attempted to extradite the parolee, and the parolee was not prejudiced by the delay.