UNITED STATES of America ex rel.
Walter A. BURGESS

v.

Richard W. LINDSEY et al.

Civ. A. No. 73–281.

United States District Court,
E. D. Pennsylvania.

May 21, 1975.

Carole McHugh, Camden, N. J., of counsel; Laurence D. Mass, Indigent

Prisoner Litigation Program, Philadelphia, Pa., for plaintiff.

Richard W. Hollstein, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

### INTRODUCTION

In this civil rights action, brought pursuant to 42 U.S.C. § 1983, plaintiff Walter A. Burgess challenges the constitutionality of certain specified practices of the Pennsylvania Board of Probation and Parole ("the Board"). At all times relevant to this complaint, the individual defendants were members of the Board. Plaintiff alleges that defendants, by detaining him after his arrest for a new crime pending his acquittal or conviction for that offense, and by detaining him after his conviction on that offense until his sentencing before affording him a parole revocation hearing, deprived him of rights secured to him by the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States. Defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has also moved for summary judgment. The material facts in this matter have either been stipulated to by the parties or appear in affidavits submitted by them. The case is therefore ripe for summary judgment. For reasons that will hereinafter appear, I have concluded that in the instant case, where nine months elapsed between plaintiff's conviction and his sentencing, defendants' practice of delaying parole revocation hearings until after sentencing violated plaintiff's Fifth and Fourteenth Amendment rights. Plaintiff is therefore entitled to summary judgment on that issue. On all other issues, however, plaintiff's motion for summary judgment will be denied, and defendants' motion for summary judgment will be granted.

### STATEMENT OF FACTS

1. Plaintiff Walter Burgess is a citizen of the Commonwealth of Pennsylvania, and is presently incarcerated at the State Correctional Institution at Graterford, Pennsylvania.

2. On December 29, 1967, plaintiff was sentenced in Montgomery County, Pennsylvania, to serve a two to ten-year term of imprisonment on a series of robbery-related criminal charges.

3. Between June 14, 1970 and December 11, 1972, plaintiff was at liberty on parole, under the jurisdiction and supervision of the Pennsylvania Board of Probation and Parole.

4. While on parole between June 14, 1970 and December 11, 1972, plaintiff was required to comply with specific parole conditions imposed by the Board.

5. One of the aforementioned conditions, Condition No. 3, read as follows:

"You will comply with all Municipal, County, State and Federal criminal laws, and abide by any written instructions of the Pennsylvania Board of Probation and Parole or your Parole Agent. You will immediately notify your Parole Agent of any arrest or investigation by law enforcement agencies."

6. On December 11, 1972, plaintiff was arrested and charged with the new criminal offenses of robbery while armed by force, burglary, conspiracy and aggravated assault and battery.

7. On December 12, 1972, plaintiff was arraigned, a detainer warrant was lodged against him, and bail was set at $10,000.00. Bail remained set at that figure until May 23, 1973, when plaintiff was convicted of the new criminal charges against him.

8. From December 12, 1972, until May 23, 1973, even if plaintiff had posted bail on the December 11 charges, the detainer warrant would have prevented his release from prison.

9. Defendants detained plaintiff for the entire period between his arraignment on December 12, 1972, and his conviction on May 23, 1973. The only reason for his detention during this period was the new criminal charges filed

against him, which suggested that he had violated Condition No. 3 of his parole.

10. Plaintiff was afforded a detention hearing on December 20, 1972.

11. On January 2, 1973, the Board ordered that plaintiff be detained pending disposition of the new criminal charges filed against him.

12. On January 5, 1973, plaintiff was afforded a second detention hearing. His counsel was present at this hearing.

13. On February 8, 1973, the Board reaffirmed its order of January 2, 1973.

14. On May 23, 1973, plaintiff was convicted of the December 11 charges. Plaintiff's bail was raised to $20,000.00. It remained set at that figure until he was sentenced on December 31, 1973.

15. On July 16, 1973, the Board, at an executive session, ordered the return of plaintiff as a convicted parole violator.[1]

16. All of the defendants were members of the Board from December 11, 1972 through May 23, 1973.

17. On December 31, 1973, plaintiff was sentenced on the new criminal charges to an aggregate term of imprisonment of twenty-three and one-half to forty-seven years.

18. On January 30, 1974, the Board received actual notice of plaintiff's December 31, 1973 sentence.

19. On February 7, 1974, plaintiff was given a formal revocation hearing.

20. On February 13, 1974, plaintiff's parole was revoked by defendants.

## DISCUSSION

### I. PRELIMINARY CONSIDERATIONS

■■ In Pennsylvania, the legislature has conferred broad discretionary power on the state Board of Probation and Parole. The Board thus has the authority to arrest and detain a parolee whenever it appears to the Board that the parolee has violated the conditions of his or her parole. 61 P.S. § 309; see Commonwealth ex rel. Sparks v. Russell, 403 Pa. 220, 169 A.2d 884 (1961). It has the authority to recommit a parolee to prison "who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record." 61 P.S. § 331.21a(a). It also has the authority to recommit to prison, after a hearing, a parolee who has violated any other terms or conditions of his parole. 61 P.S. § 331.21a(b).

■■ The power of the Board to detain and recommit is, of course, subject to constitutional restraints, in particular the requirements of due process announced in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). These cases hold, *inter alia*, that before either probation or parole can be revoked, the probationer or parolee whose conditional liberty is in jeopardy must be afforded two separate hearings, and that those hearings must be conducted in accordance with specified minimum due process safeguards. As I understand the positions of the parties in the instant matter, neither denies that Morrissey and Gagnon stand for at least that much. They part company over the timing of the final parole revocation hearing afforded by the Pennsylvania Board of Probation and Parole to detained parolees who are charged with new criminal offenses.[2]

---

1. This particular Board action "is merely a notice to the Warden of the State Prison that Mr. Burgess as a parolee is a convicted parole violator and that a revocation hearing will be held in the future." Doc. # 45, Affidavit of Hermann Tartler, ¶ 8.

2. Plaintiff's initial argument, that his pretrial detention was itself unconstitutional, requires little discussion. *Morrissey* surely does not stand for this proposition. The majority opinion explicitly contemplates the "continued detention" of the arrested paro-

The Board argues that its practice of delaying these hearings until after trial, and after sentence, if at trial the parolee is convicted of the new criminal charges, is amply justified by the realities of the criminal justice system, works to the advantage of the detained parolee, and fully complies with the constitutional standards for due process announced in relevant Supreme Court decisions. In response, plaintiff contends that these practices unreasonably delay revocation hearings, and therefore violate the minimal requirements for due process in those proceedings as set forth in Morrissey v. Brewer, *supra*, and Gagnon v. Scarpelli, *supra*. Issue is thus clearly joined by the parties. Unfortunately, the resolution of the issue is not nearly as clear as its joinder. As is often the case when parties seek to extend relatively new constitutional doctrines to factual situations different from those in which the doctrines arose, this Court is called upon to speculate about how the Supreme Court would answer a question it has never squarely been asked.

## II. REVOCATION HEARINGS AFTER TRIAL

Plaintiff's argument on this issue is appealingly simple. *Morrissey* requires that revocation hearings for parolees who are accused of technical parole violations be held within a reasonable time after a parole violator's detainer is lodged against them. The Court in *Morrissey* did not specify what it meant by a reasonable time, but did say that a period of two months was "not . . . unreasonable." 408 U.S. at 488, 92 S.Ct. 2593. Because the *Morrissey* holding was not expressly limited to technical

parole violations, and because in Gagnon v. Scarpelli, *supra,* a case which applied the *Morrissey* due process requirements to probation revocation hearings, the probationer was charged with a new criminal offense, plaintiff reasons that all of the *Morrissey* standards, including the holding of a revocation hearing within a reasonable time after the detainer is lodged, apply to parolees who have been arrested on *new* criminal charges.

In support of his argument, plaintiff contends that neither *Morrissey* nor *Gagnon* intimates that a state is exempt from the two-month "reasonable time" requirement of *Morrissey* when it conducts revocation hearings for parolees who have been accused of new crimes. I read the cases differently, and find in both of them the very intimations whose existence plaintiff denies. In *Morrissey,* the Court certainly envisioned that the revocation hearing might be held after a parolee's trial on new criminal charges, for it said that the parolee may not, in his revocation hearing, relitigate issues determined against him in other forums. 408 U.S. at 490, 92 S.Ct. 2593. This statement assumes, of course, a prior determination of these issues in other forums. Similarly, in *Gagnon,* the Court said that in most cases the arrested probationer will have either been convicted of, or have admitted the charges against him. 411 U.S. at 787, 93 S.Ct. 1756. The Court was surely aware that in many jurisdictions criminal charges against an arrested parolee, or against any arrestee for that matter, are not disposed of until more than two months have passed. It is therefore at least questionable that the Court intended

lee. 408 U.S. at 487, 92 S.Ct. 2593. And the record reveals full compliance with the *Morrissey* requirements for the early stages of detention. Plaintiff was afforded a timely detention hearing, Statement of Facts, *supra,* ¶ 10, with adequate due process safeguards, Doc. # 45, Affidavit of Hermann Tartler, ¶ 6. And the Board had ample reason not to lift the detainer lodged against plaintiff: "The primary reason for detaining Mr. Burgess in this case was that he had

been charged a serious, violent crime during which the victims were injured and the factual circumstances surrounding his arrest as indicated on the Arrest Report and Report of Arrest of Parolee showed a strong likelihood that Mr. Burgess committed the crime. He was considered dangerous to society and was not rehabilitated to the extent necessary to permit him to continue on parole undetained prior to trial." Affidavit of Hermann Tartler, *supra,* ¶ 9.

that the reasonable time requirement for revocation hearings of approximately two months should apply to parolees arrested on new criminal charges as well as to parolees charged merely with technical violations of parole conditions. One thus cannot accept plaintiff's argument in its entirety without ignoring clear signs in both *Morrissey* and *Gagnon* that the issue is more complex than plaintiff believes.

In support of its contention that it may detain parolees accused of new crimes until their guilt or innocence is determined by the criminal justice system, the Board relies on two cases, Commonwealth ex rel. Brooks v. Lindsey, Civil Action No. 511 (C.P.York Cty., March 22, 1973), aff'd, 228 Pa.Super. 759, 312 A.2d 800 (1973), and Stroman v. Lindsey, 360 F.Supp. 124 (W.D.Pa. 1973). Neither case, however, provides much guidance in the instant matter, for neither grappled with the precise legal problem at issue here, namely, whether the suggested *timing* for a final parole revocation announced in *Morrissey* applies to parolees accused of new criminal offenses.

This problem arises from the striking differences between the situation of a parolee who stands accused of a technical violation of his parole conditions and that of a parolee who stands accused of a new criminal offense. Those differences may justify a difference in treatment by the state. Absent the detainer lodged against him, the technical violator would face no criminal liability or threat of recommitment to prison. There is, for example, no substantive criminal offense of failing to notify one's parole agent of a change of ad-dress or employment. The technical violator therefore has a vital stake in the prompt determination by the parole board of whether or not his parole is to be revoked. If the board decides not to revoke, he is free to return to the society at large and to enjoy the conditional liberty that is the essence of his status as a parolee.

The situation of the parolee who is accused of committing another crime is altogether different. His exposure to criminal liability is much greater; he is threatened with reincarceration on two separate grounds, violation of his parole and the new substantive criminal charges. Absent the detainer, he would still have to stand trial on those charges. He is less likely to be interested in a speedy revocation hearing, since it may lead to his reincarceration in a situation where his accusers would have to meet a lesser burden of proof than the prosecution would in a trial of the criminal charges outstanding against him. His parole is more likely to be revoked at an earlier hearing than the parole of a technical violator, precisely because new criminal charges are more serious than mere technical violations of parole conditions. He may also be less interested in a speedy revocation hearing because he could not take proper advantage of his opportunity to be heard at such a proceeding without waiving his Fifth and Fourteenth Amendment privilege against self-incrimination, a privilege he might wish to preserve for his subsequent trial on the substantive criminal charges.[3] Finally, he has a less vital stake in a speedy revocation hearing than the technical violator because he, unlike the technical violator, is not as-

---

3. In the instant case, plaintiff argues that *his* constitutional right to due process is violated when the Board delays *his* final parole revocation hearing until *after* trial. In other cases, however, similarly situated parolees have argued that *their* constitutional right against self-incrimination was violated when the Board held such a hearing *prior* to trial. See Flint v. Mullen, 499 F.2d 100 (1st Cir. 1974), and Commonwealth v. Kates, 452 Pa. 102, 305 A.2d 701 (1973). In neither of these cases did the parolee prevail, but in Flint v. Mullen, *supra*, the majority of the panel said that it would be preferable to hold the revocation hearing after trial, 499 F.2d at 105, and Chief Judge Coffin, in dissent, contended that the hearing should be held after trial as a matter of constitutional law, id. at 105–06.

sured of his freedom if his parole is not revoked; he still must answer the new criminal charges filed against him.

The Court in *Morrissey* envisioned a two-stage revocation process. "The first step in a revocation decision . . . involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." 408 U.S. at 479, 92 S.Ct. at 2599. If the fact-finder determines that a parole violation has occurred, the parole board must then ask a second question: "should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" Id. at 480, 92 S.Ct. at 2599.

When this process involves an alleged technical parole violator, the Board plays a unique role. It is the sole finder of fact, and alone determines whether a parole violation has in fact occurred. Should the board decide that no violation has occurred or that, even though a violation has occurred, revocation is not warranted, the technical violator will be returned to the conditional liberty he previously enjoyed.

When the Board is called upon to deal with a parolee whose only alleged parole violation is the commission of a new crime, however, its role changes significantly. No longer is it the only finder of fact. Indeed, at the first stage of the final revocation process, it is not a finder of fact at all. The crucial and "wholly retrospective factual question" that must be answered, Morrissey v. Brewer, *supra*, 408 U.S. at 479, 92 S.Ct. 2593, is whether a parole violation has occurred, in other words, whether the parolee has in fact committed a new crime. The Board does not answer that question; the criminal justice system does, and "[t]he Board takes the position that it is bound by the determination of guilt as determined in the criminal court system wherein the parolee was convicted."

Doc. # 45, Affidavit of Hermann Tartler, ¶ 8.[4] The Board cannot begin to apply its own expertise to the ultimate revocation decision until the criminal justice system has answered that question.

It therefore appears that to hold a revocation hearing prior to trial for a parolee who is accused of a new crime is to conduct an exercise of futility. Under the present administrative scheme, the Board does not know prior to trial whether the parolee has in fact violated the terms and conditions of his parole, for the trial is dispositive of that issue. Thus, the final parole revocation inquiry envisioned by the Court in *Morrissey* cannot properly begin until the Board learns whether or not the parolee has violated his parole. The Board does not learn that fact until the guilt or innocence of the parolee has been determined within the criminal justice system.

■■■■ The touchstones for the application of the Due Process Clause of the Fourteenth Amendment are reasonableness and fairness in view of all the facts and circumstances of a particular case. Barker v. Hardway, 283 F.Supp. 228, 237 (S.D.W.Va.), aff'd, 399 F.2d 638 (4th Cir. 1968), cert. denied, 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969); see Hyland v. Procunier, 311 F.Supp. 749, 750 (N.D.Cal.1970). In the instant case, the most important circumstance that this Court must consider in deciding whether the requirements of due process have been satisfied is the Board's reliance on the criminal justice system for a determination of the fact of a parole violation. This circumstance radically differentiates the situation of a parolee accused of a new crime from that of a technical violator. "Reasonable" time parameters for the latter's final revocation hearing are therefore not necessarily "reasonable" time parameters for the final revocation hearing of the former. Given the Board's reliance

---

4. The Board is similarly bound when the criminal charges are disposed of without a guilty verdict. In that event, "the Superintendent of Parole shall be notified and he shall issue a release order." 2 Pa.B. 34, August 5, 1972, at 1467.

on the outcomes of the criminal justice system, the final revocation hearing of a parolee accused of a new crime would be unreasonably delayed only if his right to a prompt and speedy trial were itself violated. See Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Plaintiff does not make such a claim here and, in any event, I do not believe that the five-month delay between his arrest and conviction would support such a claim if plaintiff had in fact made it. See United States v. Lewis, 406 F.2d 486 (7th Cir.), cert. denied, 394 U.S. 1013, 89 S.Ct. 1630, 23 L.Ed.2d 39 (1969). Accordingly, in light of all the circumstances and facts of this case, I hold that the Board did not violate plaintiff's due process rights by delaying his final parole revocation hearing until after his trial on the new criminal charges lodged against him.

The decision of the Court of Appeals for the First Circuit in Flint v. Mullen, *supra*,[5] points to this result too. If it is constitutionally preferable to hold a final revocation hearing *after* trial, it is surely not unreasonable to do so when the trial itself has not been unreasonably delayed.

## III. REVOCATION HEARINGS AFTER SENTENCING

■ Plaintiff further argues that the Board, by delaying his final revocation hearing until after his sentencing on the new criminal charges, committed an additional constitutional violation. In response, the Board, relying on Commonwealth v. Greer, 215 Pa.Super. 66, 257 A.2d 317 (1969), which gave the term "conviction" a highly technical meaning that included sentencing as well as a finding of guilt, contends that it may properly wait until after sentencing to hold a revocation hearing for convicted parole violators. Until sentence is pronounced, the Board says, "conviction" is not complete. I do not find this argument persuasive. I prefer to give the term "conviction" its ordinary meaning,

namely, a verdict or plea of guilty. That is also the meaning that the Pennsylvania Legislature gave the term when it authorized the Board to recommit "convicted parole violators." 61 P.S. § 331.21a(a). A verdict or plea of guilty provides the Board with all the information it needs to begin the parole revocation process, for it establishes the fact of a parole violation. It is then the Board's responsibility to determine whether or not revocation is justified. The Board has presented no compelling reason for waiting until after sentencing to make this determination. Accordingly, I hold that the Board must afford a convicted parole violator a final parole revocation hearing within a reasonable time after his guilt is established.

■ In the instant case, plaintiff's parole revocation hearing was held almost nine months after his conviction. Was this delay unreasonable? I believe that it was. In Morrissey v. Brewer, *supra*, the Supreme Court said that a "lapse of two months [between a parolee's initial detention and the final revocation hearing] . . . would not appear to be unreasonable." 408 U.S. at 488, 92 S.Ct. at 2604. In the instant case, a similar lapse of time between conviction and the final parole revocation hearing would not have been unreasonable. In Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.D.C.1973), the Court held that a delay of five months in granting a hearing after conviction was unreasonable as a matter of constitutional law. In the instant case, the delay was almost seven months longer than that suggested in *Morrissey*, and almost four months longer than that found unconstitutional in *Sutherland*. In light of these cases, then, I hold that the revocation hearing afforded plaintiff was unreasonably delayed and that the delay therefore violated his Fourteenth Amendment right to a reasonably prompt final revocation hearing.

5. See footnote 3, *supra*.

The decision of the Court of Appeals for the Fifth Circuit in Cook v. United States Attorney General, 488 F.2d 667 (5th Cir. 1974), does not dictate a contrary result. While the Court there found no constitutional violation, even though a much longer delay ensued between the lodgment of a detainer and a final revocation hearing than is the case here, it rested its decision on two factors not present in the instant case. In *Cook*, the detainer warrant had never been executed. Moreover, the plaintiff there did not show that he had been prejudiced by the delay. Here, the execution of the detainer is not in issue, and the plaintiff, in his affidavit, has recited facts which might permit at least a colorable inference that he has been prejudiced by the delay. Given these crucial factual differences between *Cook* and the instant case, I do not believe that *Cook* should control the result I reach here.

## IV. THE ISSUE OF BAIL

■ In his final constitutional claim, plaintiff contends that the detainer lodged against him by defendants deprived him of his right to bail under the Eighth and Fourteenth Amendments. I find this argument without merit. The same plaintiff advanced the same claim, supported by the same arguments, in another case this Court recently decided. Burgess v. Roth, 387 F.Supp. 1155 (E.D.Pa.1975). For the reasons stated therein, I hold that the detainer lodged against plaintiff by the defendants did not deprive him of his right to bail under the Eighth and Fourteenth Amendments. Burgess v. Roth, *supra*, 387 F. Supp. at 1162.[6]

## V. THE DAMAGE ISSUE

■ In the instant case, plaintiff has shown a violation of his Fourteenth Amendment rights. Nevertheless, an award of damages would be justified here only if defendants had disregarded clear and previously announced constitutional standards. The difficulty I have experienced in determining the extent to which the *Morrissey* standards apply to the instant plaintiff and similarly situated parolees has persuaded me that the application of those standards to parolees accused of new criminal offenses was not announced with sufficient clarity to justify an award of money damages.

An affidavit of Hermann Tartler, secretary of the Board, lends additional support to the conclusion that the Board acted in good faith and in reasonable reliance on the relevant constitutional standards when it decided to detain the present plaintiff. See Doc. # 45, App. B, at ¶¶ 6(d), 7. Except for assertions in the plaintiff's brief, assertions which are not sufficient to raise a material issue of fact, that affidavit stands uncontradicted in the present record. Moreover, the record reveals that the present regulations of the Board, first proposed in 2 Pa.B. 972, June 3, 1973 and now codified at 39 Pa.Code §§ 71.3 and 71.4, were modified prior to final adoption in an attempt to comply with the due process requirements of *Morrissey*. See 2 Pa.Bull. 1465, August 5, 1972. In these circumstances, to award money damages to the plaintiff would be to render a retroactive decision on new constitutional grounds. That practice is not favored in this Circuit. See Bauer v. Sielaff, 372 F.Supp. 1104, 1108 (E.D.Pa.1974), and cases cited therein. Accordingly, I hold that plaintiff, even though he has prevailed on one of his constitutional claims, is not entitled to an award of money damages.

---

6. I have considered plaintiff's other claims—that he is entitled to further discovery, and that the Board's reliance on the results of criminal preliminary hearings is an unconstitutional use of a conclusive presumption—and I find them to be without merit as well.

On the discovery issue in particular, plaintiff has specifically waived the right to additional discovery. See Doc. # 44, Consolidated Order in Civil Action Nos. 71–938, 73–217, and 73–281, filed September 25, 1974, at 2.

## VI. THE SCOPE OF THIS DECISION

In view of the present extensive litigation on behalf of prisoners which challenges so many phases of the criminal justice and correctional systems, it is essential that trial court judges be especially cautious about writing overly expansive constitutional opinions which go far beyond the factual parameters of the particular case they are deciding. When a judge writes overbroadly, he may articulate doctrines for other unspecified factual situations with implications that he did not anticipate. Often, if he had foreseen those implications, he would have been more reluctant to announce "eternal constitutional principles." In this case, plaintiff's counsel take the broadest approach possible and urge the Court to promulgate doctrines which extend far beyond the factual contours of this case. This approach is probably good advocacy for one's client, but the trial judge's role differs from that of the advocate. In this case, my ruling of unconstitutionality is primarily focused on the extensive delay between conviction and sentencing—a period of nine months. I am holding merely that a delay of such magnitude without affording a detained parolee a final revocation hearing is a constitutional violation.

Of course, there may be circumstances where the original criminal trial is so long delayed that the delay itself would be a violation of defendant's constitutional right to a speedy trial on the "new" criminal charges. See p. 410, *supra*. Such a delay would, *a fortiori*, be a violation of defendant's right to a reasonably prompt revocation hearing. In this case, however, I do not find that the instant plaintiff was denied his right to a speedy trial. Thus there was no attendant violation of his right to a reasonably prompt revocation hearing.[7]

## CONCLUSION

Plaintiff has shown that the Board, by delaying his final parole revocation hearing for nine months after his conviction on the new criminal charges lodged against him, has violated his constitutional right to due process. He is therefore entitled to summary judgment on that issue. On all other issues, however, his motion for summary judgment will be denied, and the Board's motion for summary judgment will be granted. Counsel for plaintiff and defendant are directed to submit to the Court, within 20 days of the filing of this opinion, a proposed form of order not inconsistent with this opinion.

The foregoing opinion shall constitute the Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

---

7. The Court wishes to express its appreciation to the students of the University of Pennsylvania Law School's Indigent Prisoner Litigation Program who served as plaintiff's counsel in this case under Local Rule 9½. Though they did not prevail on all of their claims, they briefed and argued each issue with unlimited vigor and creativity.