John Scott JACOBS, Petitioner

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2010.

Decided May 9, 2011.

Publication Ordered July 12, 2011.

Harry J. Cancelmi, Jr., Waynesburg, for petitioner.

Alan M. Robinson, Assistant Counsel, Harrisburg, for respondent.

BEFORE: COHN JUBELIRER, Judge, and BUTLER, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

John Scott Jacobs (Jacobs) petitions for review of the determination of the Pennsylvania Board of Probation and Parole (Board) mailed on August 27, 2009, in which the Board determined, on remand from this Court, that Jacobs' May 9, 2007 parole revocation hearing was timely pursuant to the Board's regulation at 37 Pa. Code § 71.4. As a result of the May 9, 2007 hearing, the Board issued an Order revoking Jacobs' parole and recommitting him as a convicted parole violator. Jacobs argues that the Board's determination that this revocation hearing was timely is not supported by substantial competent evidence.

In *Jacobs v. Pennsylvania Board of Probation and Parole,* 958 A.2d 1110 (Pa. Cmwlth.2008) (*Jacobs I*), our Court remanded this matter to the Board for an evidentiary hearing and determination on the merits of the issue of whether Jacobs' revocation hearing was timely. In that opinion, we described the relevant facts as follows:

On December 15, 2003, Jacobs was paroled from his original 12 to 27–year sentence. At that time, Jacobs' maximum sentence date was November 20, 2017.

On January 12, 2005, Jacobs was arrested and charged with attempted burglary, criminal trespass, and possession of an instrument of crime. As a result, the Board lodged a warrant to commit and detain Jacobs for violating the terms of his parole. By decision dated February 23, 2005, the Board directed that Jacobs be detained pending the disposition of his criminal charges. Thereafter, by decision dated May 19, 2005, the Board recommitted Jacobs as a technical parole violator to serve nine months backtime, when available.

On July 6, 2005, Jacobs was found guilty of attempted burglary and possession of an instrument of crime. Jacobs was confined in a state correctional institution beginning on July 15, 2005. Jacobs was later granted a new trial [and his July 6, 2005 conviction was vacated]; however, on February 9, 2006, Jacobs was again found guilty of attempted burglary and possession of an instrument of crime.

On May 9, 2007, the Board held a parole revocation hearing during which Jacobs, who was unrepresented by counsel, did not object to the timeliness of the hearing. By decision dated July 18, 2007, the Board recommitted Jacobs as a convicted parole violator to serve a total of 15 months backtime, and the Board recalculated Jacobs' maximum sentence date as June 20, 2019.

Jacobs, after obtaining counsel, subsequently filed an administrative appeal in

which he asserted, for the first time, that the Board did not hold his parole revocation hearing within 120 days of the official verification date of his conviction. By decision dated January 28, 2008, the Board affirmed Jacobs' recommitment as a convicted parole violator.

*Jacobs I*, 958 A.2d at 1111–12 (footnote omitted). In *Jacobs I*, the Board argued that because Jacobs did not object to the timeliness of his revocation hearing at the revocation hearing, but only raised the issue in his administrative appeal to the Board, he waived the timeless issue. *Id.* at 1112. We disagreed and held that Jacobs preserved the issue by raising it in his administrative appeal to the Board. *Id.* at 1117. Jacobs also argued that a "docket sheet entered into the record by the prosecuting agent establishes that the Fayette County Clerk of Courts notified the Board of Jacobs' new conviction on May 22, 2006," more than 120 days before Jacobs' revocation hearing on May 9, 2007. *Id.* at 1112. With respect to this argument, we stated:

> we disagree that the docket sheet entered into the record by the prosecuting agent establishes that Jacobs' parole revocation hearing was untimely. Before a parolee who is confined within the jurisdiction of the Department of Corrections is recommitted as a convicted parole violator, the Board must hold "a revocation hearing ... within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest court level." 37 Pa.Code § 71.4(1). "Official verification" is defined as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa.Code § 61.1. Here, as the Board correctly asserts, the dock-

et sheet entered into the record by the prosecuting agent does not establish when the parolee's supervising agent actually *received* a direct written communication from the Court of Common Pleas of Fayette County attesting to Jacobs' new conviction.

*Id.* at 1117 (alteration in original) (omission in original) (emphasis in original). Therefore, this Court remanded the matter to the Board to hold an evidentiary hearing on the timeliness of Jacobs' revocation hearing. *Id.*

On December 9, 2008, the Board issued a Notice of Charges and Hearing setting a hearing date for December 17, 2008 to determine the timeliness of Jacobs' revocation hearing. Jacobs' public defender requested a continuance, to which Jacobs consented, and the hearing was rescheduled for January 7, 2009. (Letter from Jacobs' counsel to Institutional Parole Supervisor of S.C.I. Greene (December 15, 2008), R. at 177.) Jacobs requested a second continuance for the purpose of obtaining witnesses and other documents and the hearing was continued until July 29, 2009. (Request for Continuation of Hearing, January 7, 2009, R. at 180.) On June 29, 2009, a District Director for the Board, on behalf of the Board, issued a subpoena to the Board's Secretary, or her designee:

> To testify in [Jacobs'] case and remain until excused; and to bring with you this subpoena, personal identification and the following: (**Bring all correspondence to and from the Board of Probation/Parole, its supervisors, agents and employees and the Clerk of Courts of Fayette County, the Court of Common Pleas of Fayette County, and/or the Honorable Judges of Said court pertaining to John S. Jacobs ... and memos, correspondence, notes, logs or other communications between the Office of the Board Secre-**

tary and any supervising agent of John S. Jacobs, and all policies and procedures related thereto.) (Subpoena, June 29, 2009, R. at 387 (emphasis in original).) A hearing was held at S.C.I. Greene on July 29, 2009 before a hearing examiner.

The Board adduced the testimony of Brian Wittik (Agent Wittik), who had handled paperwork related to Jacobs' case when he worked for the Board in the position of an institutional Parole Agent II at S.C.I. Greene. Agent Wittik testified that, on April 12, 2007, he became aware, through questions from other Board staff, in particular a technician in the Board's central office, that there was confusion regarding Jacobs' sentence in that two different sentence lengths were showing up in the Board's records for Jacobs due to the fact that his original sentence had been vacated and he had been re-convicted. (Hr'g Tr. at 10–12, July 29, 2009, R. at 201–03.) On cross-examination, Agent Wittik admitted that there was likely some record that had prompted the confusion and brought the sentencing disparity to the Board technician's attention. (Hr'g Tr. at 13–14, R. at 204–05.) The Board also adduced the testimony of Mark Jenkins, a parole agent (Agent Jenkins), who testified that he became aware of Jacobs' new conviction on April 16, 2007. (Hr'g Tr. at 15, R. at 206.) On April 30, 2007, he "went to the Fayette County Clerk of Courts and obtained a certified copy of [Jacobs' new] conviction." (Hr'g Tr. at 15, R. at 206.) On cross-examination, Agent Jenkins stated that he did not have a copy of the certified conviction, but that it was introduced into evidence in the May 9, 2007 revocation hearing. (Hr'g Tr. at 17, R. at 208.) Agent Jenkins also testified on cross-examination that he documented verification of Jacobs' new sentence on the Board's arrest report, which was also introduced in the May 9, 2007 revocation hearing. (Hr'g Tr. at 18, R. at 209.) Agent Jenkins admitted that he had to consult the arrest report prior to the hearing to refresh his memory as to the fact that he received verification of Jacobs' new conviction on April 30, 2007. (Hr'g Tr. at 20, R. at 211.)

Jacobs adduced the testimony of Sharon Thomas, the Chief Deputy Clerk of Courts for the Fayette County Clerk of Courts (FCCC) office. Ms. Thomas authenticated a certified copy of the docket entries for Jacobs' criminal case and testified that these docket entries reflected that the FCCC office sent a copy of sentence proceeding in Jacobs' case to the Board on May 22, 2006. (Hr'g Tr. at 22–25, R. at 213–16.) Ms. Thomas testified that this information would have been sent in response to a request for information by the Board and that it would have been sent to the Board's office in Harrisburg. (Hr'g Tr. at 26, R. at 217.) She also testified that the sentence proceeding was sent to the Board return receipt requested and was not returned as undeliverable. (Hr'g Tr. at 29, R. at 220.) On cross-examination, Ms. Thomas admitted that she did not have direct knowledge of any correspondence between the Board and the Fayette County Court of Common Pleas (trial court) or any record of such correspondence. (Hr'g Tr. at 30–31, R. at 221–22.) Jacobs also called as a witness Patrick Collins, a parole supervisor for the S.C.I. Greene Parole Office, as a designee of the Board's secretary, Cynthia Daub. Mr. Collins testified that, despite the subpoena, he was unaware what files might be in the Board's records in Harrisburg, aside from the record of the prior proceedings involving Jacobs' case in this matter. (Hr'g Tr. at 38–44, R. at 229–35.)

The Hearing Examiner found that the revocation hearing had been timely held.

(Evidentiary Hearing Report at 3, August 12, 2009, R. at 187.) He found that Jacobs' file had been closed after the initial conviction and that Agent Jenkins acted quickly to obtain official verification of the new conviction once he learned of it. (Evidentiary Hearing Report at 3, R. at 187.) With regard to the sentence proceeding sent to the Board in 2006, the Hearing Examiner determined that there was no evidence as to the nature of the Board's request to the FCCC and that there was no testimony that the sentence proceeding was sent to the parole agent actually in charge of Jacobs' case. (Evidentiary Hearing Report at 3, R. at 187.)

On August 27, 2009, the Board mailed a Notice of Board Decision determining that Jacobs' revocation hearing was timely held. Jacobs filed an administrative appeal to the Board on September 8, 2009. By letter mailed January 4, 2010, the Board affirmed its determination and denied Jacobs' administrative appeal. Jacobs now petitions this Court for review.[1]

On appeal to this Court, Jacobs argues that: (1) written notice sent to the Board's office in Harrisburg should be considered notice sufficient to start the 120–day time period within which Jacobs' revocation hearing had to be held pursuant to 37 Pa.Code § 71.4; and (2) no other substantial evidence exists to support the Board's finding that Jacobs' revocation hearing was timely held because the official verification upon which the Board relies postdates Jacobs' original revocation hearing. In addition, the Board asserts, for the first time in this proceeding, that Section 71.4 is not applicable to Jacobs' revocation hearing in this case.

■ We preliminarily address the Board's argument that Section 71.4 does not apply to the revocation of Jacobs' parole as a convicted parole violator because Jacobs' parole had already been revoked for technical violations and Jacobs was not, therefore, a parolee for purposes of Section 71.4. Section 71.4 of the Board's regulations provides that before a *parolee* may be recommitted as a convicted parole violator:

> (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> > (i) If a *parolee* is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle,* 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.
> >
> > (ii) A *parolee* who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver.

37 Pa.Code § 71.4(1) (emphasis added). The Board argues that because Section

1. "Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether the necessary findings of fact are supported by substantial evidence." *Gibson v. Pennsylvania Board of Probation and Parole,* 3 A.3d 754, 755 n. 1 (Pa. Cmwlth.2010).

71.4 refers to parolees, it is not intended to apply to inmates whose parole has already been revoked for technical violations. This Court has previously rejected this argument. *Wiley v. Pennsylvania Board of Probation and Parole,* 967 A.2d 1060, 1063 n. 5 (Pa.Cmwlth.2009). In addition, we note that precedent has applied Section 71.4 to "parolees" who initially had their parole revoked for technical violations and were subsequently recommitted as convicted parole violators. *See, e.g., Butler v. Pennsylvania Board of Probation and Parole,* 989 A.2d 936, 941 (Pa.Cmwlth.2010) (discussing parolee's proper backtime as both a convicted and technical parole violator). Moreover, if we were to accept the Board's argument that Section 71.4 only applies to parolees and that Jacobs was not a parolee for purposes of recommitment as a convicted parole violator where his parole had been revoked for technical violations, then we would also have to hold that the Board could not revoke Jacobs' parole as a convicted parole violator.

Just as Section 71.4 speaks in terms of parolees, so does Section 6138 of the Act commonly referred to as the Parole Act, which provides for the revocation of parole of convicted violators:

(a) Convicted violators.—

(1) A *parolee* under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the *parolee* is convicted or found guilty by a judge or jury or to which the *parolee* pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.

61 Pa.C.S. § 6138(a) (emphasis added). Therefore, if the Board believes it had the authority to revoke Jacobs' parole as a convicted parole violator pursuant to Section 6138, it must also agree that he was a parolee when he was convicted. Conversely, if the Board argues that Jacobs was not a parolee for purposes of Section 71.4, then it must agree that it lacked the authority to revoke his parole as a convicted parole violator pursuant to Section 6138. We do not believe that the Board's current arguments correctly interpret Section 71.4 and we, therefore, do not accept the Board's arguments on this issue.

■ We next address Jacobs' argument that the written notice sent to the Board in Harrisburg should be considered notice sufficient to start the 120–day time period within which Jacobs' revocation hearing had to be held pursuant to Section 71.4. In considering this argument, it is helpful to reflect upon the history of case law relating to official verification of convictions for the purposes of Section 71.4 and the Board's duty to hold timely revocation hearings.

In *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court held that the procedures to revoke parole must meet the standards of due process. In *United States ex rel. Burgess v. Lindsey,* 395 F.Supp. 404 (E.D.Pa.1975), the United States District Court for the Eastern District of Pennsylvania (Federal District Court) held that it is proper, in the case of a parolee facing revocation as a convicted parole violator, for the Board to hold the revocation hearing after the parolee's conviction on the new criminal charge. *Id.* at 410–11. However, the Federal District Court held that it was not reasonable within the bounds of due process for the Board to wait to hold the parolee's revocation hearing until after sentencing on the new criminal charge, which took place approximately nine months after the conviction. *Id.* at 411. As a result of an unpub-

lished order by the Federal District Court in the *Burgess* case, the Board promulgated Section 71.4. *Gaito v. Pennsylvania Board of Probation and Parole,* 488 Pa. 397, 402 n. 4, 412 A.2d 568, 570 n. 4 (1980). As discussed above, Section 71.4 sets out a general rule that "before a parolee is recommitted as a convicted violator: (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level." 37 Pa.Code § 71.4. The Board's regulations define "official verification" as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa.Code § 61.1.

In interpreting these regulations, this Court has attempted to strike a balance, adhering to the letter of the regulations while remaining cognizant of the due process concerns that drove the promulgation of Section 71.4. For example, in *Williams v. Pennsylvania Board of Probation and Parole,* 134 Pa.Cmwlth. 597, 579 A.2d 1369 (1990), this Court held that:

> When the record contains no official verification, the 120–day period begins to run on the date that the Board could have obtained official verification.... Unreasonable and unjustifiable delays which are not attributable to the parolee or his counsel do not toll the running of the 120 days.

*Id.* at 1371–72. In *Fitzhugh v. Pennsylvania Board of Probation and Parole,* 154 Pa.Cmwlth. 123, 623 A.2d 376 (1993), the parolee pleaded guilty to new criminal charges on July 3, 1991, but the parolee's supervising parole agent did not receive verification of the conviction until November 26, 1991. The Board held the parol-

ee's revocation hearing on February 27, 1992. The parolee argued that:

> the Board ha[d] instructed its parole agents that the time begins to run only when an agent of the Board goes to the courthouse and retrieves the records. He allege[d] that in many cases the revocation hearing is scheduled before the record is retrieved from the court, and an otherwise untimely hearing can be made to appear timely by the simple expedient of retrieving and date-stamping the record near the date of the hearing. He allege[d] that the Board's practice is susceptible to abuse....

*Id.* at 378 (emphasis omitted). On the basis of these allegations and the Board's failure to address them at the revocation hearing, this Court remanded the case to the Board to "establish the facts relating to the 143–day period between the conviction and the receipt of the conviction records." *Id.* at 379. However, as the Board points out, in *Lawson v. Pennsylvania Board of Probation and Parole,* 977 A.2d 85 (Pa.Cmwlth.2009), this Court stated that "[n]either statute nor regulation places a burden on the Board to demonstrate that it exercised due diligence in obtaining official verification of a parolee's new conviction. The Board's duties are set by the Parole Act and its implementing, duly promulgated regulation at 37 Pa. Code § 71.4(1)." *Id.* at 88 (footnote omitted).

However, this case is very similar to *Fitzhugh.* It is extremely troubling if the Board actually received notice of Jacobs' new conviction, albeit not "official verification" as defined by the Board's own regulations, but failed to act on that notice for nearly one year. In response to these allegations raised by Jacobs, this Court, in *Jacobs I,* remanded the case to the Board to establish facts regarding these allegations. While Jacobs introduced evidence

supporting his allegation that the Board had received official communication of his new conviction, the Board did not offer any explanation for the delay in receipt of this information by Jacobs' supervising parole officer. Moreover, the question here is not whether the Board exercised due diligence in *receiving* verification of Jacobs' new conviction, but whether it unreasonably delayed his revocation hearing once it did receive such verification. Due to the Board's lack of evidence on this issue, we must hold that it did unreasonably delay Jacobs' revocation hearing.

The Board argues that the sentence proceeding it received from the FCCC in May 2006 would not have necessarily notified the Board of Jacobs' new conviction. However, the wording of the sentence order read into the record by the trial court in the sentence proceeding is identical to the language of the sentence order entered into evidence at Jacobs' revocation hearing, which Agent Jenkins pointed to at the timeliness hearing as the official verification of Jacobs' new conviction. The sentence order states:

> AND NOW, February 10, 2006, the sentence of the Court is that the defendant, JOHN SCOTT JACOBS, pay the costs of prosecution; pay the sum of Seventy Dollars ($70.00) to the State Treasurer for the Crime Victims Compensation Fund/Domestic Violence Fund and the Victim Witness Service Fund; pay the sum of Five Hundred Dollars ($500.00) to the County of Fayette for use of the Law Library and undergo imprisonment at a state correctional institution for a period of not less than thirty-six (36) months nor more than one hundred twenty (120) months. This sentence shall aggregate with and run consecutive to the defendant's current sentences. . . . The defendant is given credit for time served on this offense from January 12, 2005 through July 14, 2005,

as the defendant's parole was revoked on July 17, 2005.

(Sentence Order, No. 420 of 2005, February 10, 2006, R. at 99.) In comparison, the trial court stated on the record in the sentence proceeding:

> AND NOW, February 10, 2006, the sentence of the Court is that the defendant, JOHN SCOTT JACOBS, pay the costs of prosecution; pay the sum of Seventy Dollars ($70.00) to the State Treasurer for the Crime Victims Compensation Fund/Domestic Violence Fund and the Victim Witness Service Fund; pay the sum of Five Hundred Dollars ($500.00) to the County of Fayette for use of the Law Library and undergo imprisonment at a state correctional institution for a period of not less than thirty-six (36) months nor more than one hundred twenty (120) months. This sentence shall aggregate with and run consecutive to the defendant's current sentences. . . . The defendant is given credit for time served on this offense from January 12, 2005 through July 14, 2005, as the defendant's parole was revoked on July 17, 2005.

(Sentence Proceeding, February 10, 2006, at 8, R. at 277.) Given the identical language, the sentence proceeding should have made the Board as aware of Jacobs' new conviction as the Board argues the sentence order did. We, therefore, reject the Board's argument on this point.

The Board also argues that it cannot be charged with receipt of the sentence proceeding because Jacobs did not adduce sufficient proof of its proper mailing. It is true that the mailbox rule is triggered by evidence of actual mailing of a document, not by testimony of general business practice relating to the regular mailing of documents. *Department of Transportation, Bureau of Driver Licensing v. Whitney,*

133 Pa.Cmwlth. 437, 575 A.2d 978, 979 (1990) ("[a] presumption that a letter was received cannot be based upon a presumption that the letter was properly mailed. A presumption cannot be based on a presumption."). However, the transcript reflects that Ms. Thomas testified as to when the sentence proceeding *was* sent to the Board, not as to the FCCC's general procedures for mailing documents or when the sentence proceeding should or would have been sent. (Hr'g Tr. at 29, R. at 220.) Therefore, the mailbox rule applies in this case. Additionally, while the Board attempts to cast Ms. Thomas' testimony as hearsay, it did not object to her testimony at the timeliness hearing, and her testimony is corroborated by the Administrative Office of Pennsylvania Courts docket entry reflecting the mailing of the sentencing proceeding to the Board.

■ Finally, the Board makes what is, in essence, a separation of powers argument, arguing that if a Board *member* received the sentence proceeding, the Board member could not provide the supervising parole agent with that information while still remaining neutral and detached. · It is true that an agency with both prosecutorial and adjudicatory functions must maintain a wall between those functions to prevent an impermissible comingling of its executive and judicial powers. *Lyness v. State Board of Medicine,* 529 Pa. 535, 546–49, 605 A.2d 1204, 1209–11 (1992). However, Jacobs does not argue that the sentencing proceeding was received by a *member* of the Board, but rather that the Board, *as an agency,* received the sentence proceeding. While the Board was requested to bring all of its records relating to Jacobs to the timeliness hearing, it admittedly did not and, due to this failure, it is unclear which Board department received the sentence proceeding. Although the Board alleges in its brief that it regularly receives sentence proceedings and these are "summarily warehoused by Board staff without any inspection until a defendant nears the date on which he becomes eligible for parole," (Board Br. at 23 n. 2), there is no proof in the record to support the Board's allegation on this point.

In some ways, the Board's allegation that sentence proceedings are automatically received by the Board, but are summarily warehoused without inspection, are similar to those of the parolee in *Fitzhugh,* who argued that "the Board has employees in the court system, known as Parole Board Liaisons . . . , whose sole function is to retrieve conviction records." *Fitzhugh,* 623 A.2d at 377–78. In this case, however, we are faced with the question of whether, when apparently supplied with actual notice that a parolee has been convicted, which notice is worded identically to the "official verification" eventually obtained by the parolee's supervising parole agent, the Board may refrain from conveying that information to the supervising parole agent and wait an indeterminate amount of time before the parole agent is somehow notified of the new conviction so that he may formally retrieve "official verification" before the time within which a revocation hearing begins to run. In *Lawson,* this Court indicated an inclination to adhere strictly to the letter of the Board's regulations, with deviation only in extraordinary circumstances, if at all. However, it is extremely troubling that the Board argues that a parolee may sit waiting for a revocation hearing while the Board claims, without explanation, that it has no obligation to give its parole agents the information required by the Board's regulations. Under the unique circumstances of this case, where: (1) the Board was asked to bring its records related to Jacobs' case to the timeliness hearing and failed to do so; (2) the Board offered no explanation sup-

ported by evidence of record as to why the Board could not forward a copy of the trial court's written verification to Jacobs' supervising parole agent; and (3) the Board failed to offer any explanation supported by the record to explain its failure to act on the notice of Jacobs' new conviction that it actually received, we hold that Jacobs' revocation hearing was not timely held.[2] We, therefore, reverse the Order of the Board.

## ORDER

**NOW,** May 9, 2011, the Order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is hereby **REVERSED.**

---

**2.** Due to our holding on this issue, we do not    reach Jacobs' final issue.