# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Fumea, : 
                     Petitioner : 
                 : 
             v. : No. 1551 C.D. 2015
                 : Argued: June 6, 2016
Pennsylvania Board of Probation : 
and Parole, : 
             Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION**
**BY JUDGE COHN JUBELIRER**                  **FILED: September 16, 2016**

Wayne Fumea (Fumea) petitions for review of the August 11, 2015 Decision of the Pennsylvania Board of Probation and Parole (Board), which denied his administrative appeal and affirmed the decision recommitting him to serve 12 months backtime as a convicted parole violator (CPV) and recalculating his maximum date as March 17, 2023. On appeal, Fumea argues that the Board erred by not complying with Section 6138(a)(5.1) of the Prisons and Parole Code (Parole Code),[1] 61 Pa. C.S. § 6138(a)(5.1), which requires that he serve the balance of his original state sentence before serving his new federal sentence. As a result of the Board's violation of that section, he argues that his parole revocation hearing was

---

[1] Prisons and Parole Code, 61 Pa. C.S. §§ 101-6309, effective October 13, 2009, amended by, Section 20 of the Act of October 27, 2010, P.L. 931, No. 95, immediately effective, amended by, Section 15 of the Act of July 5, 2012, P.L. 1050, No. 122.

untimely. On the date of his federal sentencing, a warrant to commit and detain was issued and a representative of the Board attended his sentencing, yet did not take Fumea into custody, resulting in his serving his federal sentence before serving his original state sentence. Because we conclude that the Board did not comply with Section 6138(a)(5.1) of the Parole Code, and that, as a result, the revocation hearing was not timely held, we reverse and remand to the Board.

## I.    Background

On July 31, 1995, Fumea was sentenced to serve 5 to 10 years in a state correctional institution (SCI) after being found guilty of 3 counts of drug manufacture, sale, delivery, or possession with intent to distribute, with a maximum date set at December 13, 2009. (C.R. at 1.) Fumea was released on parole from SCI-Greensburg on December 13, 1999. (C.R. at 8.) On January 29, 2008, Fumea was arrested by federal authorities and indicted for wire fraud. Fumea posted unsecured bond the same day. (C.R. at 34.) The Board issued a warrant to commit and detain on March 5, 2008, pending the disposition of the new criminal charges. (C.R. at 10.) The Board detained Fumea pending disposition of the new criminal charges until his original maximum date of December 13, 2009, at which time he was released and the Board warrant was lifted. (C.R. at 17.) For control purposes, the Board declared Fumea delinquent effective January 29, 2008. (C.R. at 22.)[2]

---

[2] Declaring Fumea delinquent for control purposes is apparently an administrative procedure to mark Fumea's case for close review when the outstanding charges are disposed. Passaro v. Pa. Bd. of Prob. and Parole, 499 A.2d 725, 726 (Pa. Cmwlth. 1985).

Following a federal jury trial, the jury found Fumea guilty of conspiracy on July 8, 2011. (C.R. at 42.) On November 21, 2011, a federal judge sentenced Fumea to 41 months imprisonment in the custody of the United States Bureau of Prisons (BOP), with 3 years of supervised release. (Judgment in a Criminal Case, C.R. at 27; Federal Criminal Docket, C.R. at 43.) The same day, the Board issued a warrant to commit and detain Fumea. (C.R. at 23.) The judge remanded Fumea to the custody of the United States Marshal. (C.R. at 43.) The Board obtained "official verification" of Fumea's conviction on December 7, 2011, and issued an arrest warrant on December 9, 2011. (C.R. at 46.) The Board did not take Fumea into custody until December 24, 2014, when he was released from federal custody. A revocation hearing was held 62 days later on February 24, 2015. (Hearing Report, C.R. at 51.)

At the hearing, Fumea, through counsel, objected to the timeliness of the hearing and cited to Section 6138(a)(5.1) of the Parole Code regarding the order of service of sentences. Fumea testified, and the Board did not dispute, that an agent of the Board was present at the sentencing, the federal sentencing judge was prepared to issue a report date sometime in the middle of January 2012, and that he entered into federal custody after sentencing instead. (Hr'g Tr. at 13-14.) Fumea argued that he was available to the Board on the date of his sentencing, and that the Board did not take him into custody despite the presence of an agent of the Board at the sentencing. Fumea also argued that he was prejudiced by the Board's failure to follow Section 6138(a)(5.1) because of the outstanding Board detainer, and as a result, the BOP treated him adversely. Fumea contends that as a result of his serving his federal sentence before his original state sentence, while the Board had a detainer on him, he was disadvantaged because, had the Board followed Section

3

6138(a)(5.1), he would have served his federal sentence *after* his state sentence and free of a Board detainer. As such, Fumea argues, he would have been able to participate in federal rehabilitative efforts, such as home confinement and outside work, and he would have been eligible for reparole in 2011, given the credit for time he spent in state custody prior to the expiration of his maximum sentence. (Hr'g Tr. at 16.) Instead, he was precluded from all of these.

By decision mailed June 15, 2015, the Board overruled Fumea's objection to the timeliness of the hearing and recommitted him "to a State Correctional Institution as a convicted parole violator to serve 12 months backtime" for his new criminal conviction. (Board Decision, C.R. at 89.) The Board recalculated Fumea's new maximum date as March 17, 2023, based on a return to custody date of December 24, 2014. (Order to Recommit, C.R. at 91.) The decision also stated that Fumea would be interviewed for reparole on the next available docket.[3]

On June 18, 2015, Fumea filed a timely administrative appeal of the Board's June 15, 2015 decision presenting the same arguments as those raised at the hearing. Fumea asserted that after sentencing, "[t]he Sentencing Court was prepared to permit [Fumea] to remain free on bail pending his appeal until his State Parole Agent informed that Court that the Board was not prepared to take custody of him." (C.R. at 102, ¶ 7.) Fumea continued to maintain that the 120-day period within which to hold his parole revocation hearing should have commenced no

---

[3] At oral argument on June 6, 2016, Fumea's counsel advised the Court that Fumea had been released on reparole by the Board. The issue of the timeliness of Fumea's parole revocation hearing is not moot because he would not currently be on parole in accordance with the decision recalculating his maximum date as March 17, 2023 in the absence of the parole revocation charge, which forms the basis of that decision.

4

later than the date the Board issued the arrest warrant, December 9, 2011. (Id. at ¶ 10.)[4]

By Decision dated August 11, 2015, the Board denied Fumea's administrative appeal. The Board held that Fumea's hearing was timely because he was released from federal custody and returned to a SCI on December 24, 2014, and the Board held the hearing 62 days later on February 24, 2015, pursuant to 37 Pa. Code § 71.4(1)(i). (Board Decision at 1, C.R. at 105.) Fumea now petitions this Court for review of the Board's denial.[5]

## II.    Discussion

### A.    Argument

Fumea argues that his parole revocation hearing was not timely because, pursuant to the order of service of sentences set forth in Section 6138(a)(5.1) of the Parole Code, he was required to serve his state sentence prior to his new federal sentence. He contends that the Board's agent was present at his federal sentencing, there was a warrant issued that same day by the Board, and the Board should have taken custody of him prior to his serving his federal time. The Board's failure to do so denied Fumea due process, caused him to serve his federal sentence with the state detainer on him, which prevented him from being able to participate in federal rehabilitative efforts, such as home confinement and outside work, and

---

[4] Fumea also argues that he "already served nearly twice the standard range for the violation . . ." based upon his time spent in state custody prior to the expiration of his maximum date. (C.R. at 103, ¶ 12.)

[5] Our review is limited to determining whether constitutional rights were violated, whether the adjudication was in accordance with law, and whether necessary findings were supported by substantial evidence. Miskovitch v. Pa. Bd. of Prob. and Parole, 77 A.3d 66, 70 n.4 (Pa. Cmwlth. 2013), appeal denied, 87 A.3d 322 (Pa. 2014).

delayed his opportunity to make parole. He cites this Court's holding in <u>Baasit v. Pennsylvania Board of Probation and Parole</u>, 90 A.3d 74, 82-83 (Pa. Cmwlth. 2014), in support of his interpretation of Section 6138(a)(5.1) of the Parole Code.

The Board argues that it complied with Section 71.4(1)(i) of its regulations, 37 Pa. Code § 71.4(1)(i), because "Fumea was confined outside of the jurisdiction of the Department of Corrections at the time of his conviction because he was not returned to a SCI prior to his conviction." (Board's Br. at 7.) Because Fumea was returned to a SCI on December 24, 2014, and the Board conducted his revocation hearing 62 days later, on February 24, 2015, the Board argues that the hearing was timely. The Board argues there is no basis on which to find that it improperly delayed Fumea's return to a SCI, and the fact that the BOP kept custody of Fumea instead of returning him to a SCI, so that he could serve his original sentence first, does not mean that the Board failed to conduct a timely revocation hearing. Essentially, the Board argues that the BOP had custody of Fumea at the time of his arrest and conviction and then "chose to keep Fumea to serve his new federal sentence." (Board's Br. at 9.)[6] Thus, the Board argues that it did the only thing it could do – wait for Fumea's return.

## B. Analysis

When a parolee challenges the timeliness of a revocation hearing, "the Board has the burden of proving . . . that the hearing was, in fact, timely." <u>Williams v. Pa. Bd. of Prob. and Parole</u>, 602 A.2d 434, 436 (Pa. Cmwlth. 1992). Here, the Board relies on Section 71.4(1)(i) of its regulations, 37 Pa. Code §

---

[6] It is unclear whether this is factually correct. It appears that Fumea posted bond for the federal charges and was released the same day following his arrest.

6

71.4(1)(i), to support its contention that the hearing was timely held. Section 71.4(1), and subsection (i), of the Board's regulations provide that:

> The following procedures shall be followed before a parolee is recommitted as a convicted violator:
>
> (1)    A revocation hearing shall be held **within 120 days from the date the Board received official verification**[7] of the plea of guilty or nolo contendere or **of the guilty verdict** at the highest trial court level **except as follows**:
>
> (i)    If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement out-of-State, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with Commonwealth ex rel. Rambeau v. Rundle, 455 Pa. 8, 314 A.2d 842 (1973), the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa. Code § 71.4(1)(i) (emphasis added). "Where . . . the Board fail[s] to meet its burden of establishing the timeliness of the revocation hearing, the appropriate remedy is dismissal of the parole violation charges with prejudice." McDonald v. Pa. Bd. of Prob. and Parole, 673 A.2d 27, 30 (Pa. Cmwlth. 1996).

Fumea argues that his revocation hearing was not timely based upon his reading of the order of service of sentences provision of the Parole Code. Section 6138(a)(1) of the Parole Code sets forth the Board's authority to recommit a parolee who commits a crime punishable by imprisonment, as follows:

---

[7] The Board's regulations define "official verification" as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code § 61.1.

7

**(a) Convicted violators.--**

(1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted **or found guilty by a judge or jury** . . . may at the discretion of the board be recommitted as a parole violator.

61 Pa. C.S. § 6138(a)(1) (emphasis added). "It is well-settled law that the Board retains jurisdiction to recommit an individual as a parole violator after the expiration of the maximum term, so long as the crimes that lead to the conviction occurred while the individual is on parole." Miskovitch v. Pa. Bd. of Prob. and Parole, 77 A.3d 66, 73 (Pa. Cmwlth. 2013) (citations omitted), appeal denied, 87 A.3d 322 (Pa. 2014); see also 61 Pa. C.S. § 6138(a)(1).

With regard to the order of service of sentences, Section 6138(a)(5.1) of the Parole Code provides that:

(5.1) If the parolee is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction **because of a verdict** or plea under paragraph (1), **the parolee shall serve the balance of the original term before serving the new term**.

61 Pa. C.S. § 6138(a)(5.1) (emphasis added).

In this case, there is no question that Section 6138(a)(5.1) prescribes the proper order in which Fumea must serve his sentences. Instead, this case involves differing versions of the facts and the Board's responsibilities based on those facts. Fumea essentially argues that the Board agent's presence at his sentencing, and the agent's discussion with the federal judge at the sentencing, provided the Board

8

with verification of his guilty verdict and created an obligation under the Parole Code requiring the Board to assert its jurisdiction over him. Fumea contends that he was not in federal custody at the time he committed the federal offense or at any time up to and through his federal sentencing, as he posted bond at the time of his arrest. (Fumea's Br. at 18.) Fumea thus argues that the Board's findings that he was in federal custody at the relevant times are not supported by substantial evidence. The Board does not address whether these facts would create a duty, under Section 6138(a)(5.1) of the Parole Code, for it to assert its jurisdiction over Fumea at or before his sentencing and take him into state custody. We are therefore tasked with deciding whether Section 6138(a)(5.1) imposes such duty upon the Board to assert its jurisdiction over a parolee who, upon his conviction in federal court, becomes a convicted parole violator but who is not yet in federal custody under these circumstances.

Pursuant to Section 6138(a)(1), because Fumea was convicted for a crime that he committed while on parole, the Board retained jurisdiction to recommit him even after the expiration of his maximum date and his release from state custody. Fumea posted bond on the federal charges and was, thus, not under the jurisdiction of the BOP either. In addition, he was required to serve the balance of his state sentence *before* serving his new federal sentence, in accordance with Section 6138(a)(5.1), which became effective immediately when it was enacted on October 27, 2010. Fumea relies on Baasit, in which this Court thoroughly examined Section 6138(a)(5.1) in its historical context. This section changed the previous order of service of sentences, and "constituted a significant change in legislative policy regarding the order of service of sentences where the convicted parole

9

violator received a new sentence in a federal court or a court of another jurisdiction." Baasit, 90 A.3d at 82.

In Baasit, the inmate was arrested while on parole for new state charges, which were later dismissed. However, before the charges were dismissed, the inmate was arrested by federal authorities and subsequently confined in federal custody pending trial on the federal criminal charges. Essentially, he had been held in state and federal custody. The inmate pleaded guilty to the federal charges in August 2010 and, before sentencing, in November 2010, the Board held a revocation hearing, which resulted in the inmate's recommitment as a convicted parole violator "when available" pending sentencing on the new convictions. The inmate was subsequently sentenced on August 27, 2012. The federal court directed that the parole violator's federal sentence run consecutive to any sentence he "is now serving or for which he is being held." Baasit 90 A.3d at 80 (emphasis omitted). On August 28, 2012, the inmate was returned to state custody. Baasit involved the appropriate allocation of credit between the state and federal sentences, and this Court held that the Board did not take Section 6138(a)(5.1) into consideration when it denied the inmate credit against his original state sentence for confinement before his new federal sentence was imposed. Id. at 83. The Court therefore remanded to the Board to address the issue.

In Thomas v. Pennsylvania Board of Probation and Parole, (Pa. Cmwlth., No. 279 C.D. 2015, filed March 7, 2016), slip op. at 1,[8] this Court again considered Section 6138(a)(5.1). The parolee (Thomas) was paroled and subsequently

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

arrested by federal officials. The Board lodged a detainer the same day. Thomas was thereafter held in federal prison on both federal and Board detainers from the date of his arrest on federal charges until sentencing, which occurred on June 25, 2010. Thomas went on to serve his federal sentence before his backtime. In his appeal to this Court, Thomas argued that he became available to Pennsylvania authorities when he was sentenced on the federal charges on June 25, 2010. In response, the Board argued that Thomas was not available to serve his original state sentence until his release from federal custody on June 24, 2014. The Board, in its brief, conceded that "'typically,' Thomas would have become 'available' to the Board to serve his backtime on the date of sentencing on the federal charges." Thomas, slip op. at 5. This Court also stated that "[u]nder Baasit, Thomas became 'available' when he was convicted on the federal docket." Thomas, slip op. at 6; see Baasit, 90 A.3d at 76. However, this Court rejected Thomas' argument that Section 6138(a)(5.1) constituted grounds for vacating the Board's decision recalculating his maximum sentence date because that section was not yet in effect at the time Thomas was sentenced. Thomas, slip op. at 6. Thomas was sentenced four months *before* the enactment of Section 6138(a)(5.1). Therefore, the Court concluded, Thomas did not become available to the Board until his release from federal custody. Thomas, slip op. at 4. However, in the instant matter, Section 6138(a)(5.1) was in effect.

Here, the Board issued a warrant to commit and detain Fumea on November 21, 2011, the date of his sentencing. Based on Baasit and Thomas, Fumea became available to the Board upon his conviction in federal court, at which time he was not yet confined by either state or federal authorities. As discussed above, the Board retained its jurisdiction to recommit Fumea based on that conviction. It is

11

unclear why the Board issued the warrant to commit and detain on the date of Fumea's sentencing but did not act to obtain custody of Fumea while he was still available on that date and despite its agent's presence at the sentencing hearing. The Board does not offer any clear explanation for its failure to assert its jurisdiction over Fumea. Based on these facts, Fumea argues that his revocation hearing was not timely because the 120 days should have started to run from either the date of his sentencing or the date the arrest warrant was issued, and not upon his return to a SCI, while the Board relies on the alleged fact that Fumea was confined outside the jurisdiction of the Department of Corrections at the time he was sentenced.[9]

In Jacobs v. Pennsylvania Board of Probation and Parole, 24 A.3d 1074, 1079 (Pa. Cmwlth. 2011), this Court reviewed the history of case law relating to official verification of convictions for the purposes of Section 71.4 of the Board's regulations and the Board's duty to hold timely revocation hearings. We stated the following:

> In Morrissey v. Brewer, 408 U.S. 471, 481 (1972), the United States Supreme Court held that the procedures to revoke parole must meet the standards of due process. In United States ex rel. Burgess v. Lindsey, 395 F.Supp. 404 (E.D.Pa.1975), the United States District Court for the Eastern District of Pennsylvania (Federal District Court) held that it is proper, in the case of a parolee facing revocation as a convicted parole violator, for the Board to hold the revocation hearing after the parolee's conviction on the new criminal charge. Id. at 410–11. However, the Federal District Court held that it was not reasonable within the bounds of due process for the Board to wait to hold the parolee's revocation hearing until after sentencing on the new

---

[9] Fumea points out that the record is silent as to whether the Board's warrant to commit and detain was issued before or after his federal sentencing on November 21, 2011. (Fumea's Br. at 18.)

12

criminal charge, which took place approximately nine months after the conviction. Id. at 411.[10] As a result of an unpublished order by the Federal District Court in the Burgess case, the Board promulgated Section 71.4. Gaito v. Pennsylvania Board of Probation and Parole, 488 Pa. 397, 402 n.4, 412 A.2d 568, 570 n.4 (1980). As discussed above, Section 71.4 sets out a general rule that "before a parolee is recommitted as a convicted violator: (1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level." 37 Pa. Code § 71.4. The Board's regulations define "official verification" as "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code § 61.1.

. . . .

**It is extremely troubling if the Board actually received notice of Jacobs' new conviction, albeit not "official verification" as defined by the Board's own regulations, but failed to act on that notice for nearly one year.**

Jacobs, 24 A.3d at 1079-80 (emphasis added). We recognized that "[i]n interpreting the [ Board's] regulations, this Court has attempted to strike a balance,

---

[10] Judge Higginbotham of the Federal District Court in Burgess, stated:

I prefer to give the term 'conviction' its ordinary meaning, namely, **a verdict** or plea of guilty. That is also the meaning that the Pennsylvania Legislature gave the term when it authorized the Board to recommit 'convicted parole violators.' **A verdict or plea of guilty provides the Board with all the information it needs to begin the parole revocation process, for it establishes the fact of a parole violation. It is then the Board's responsibility to determine whether or not revocation is justified.** The Board has presented no compelling reason for waiting until after sentencing to make this determination. Accordingly, I hold that the Board must afford a convicted parole violator a final parole revocation hearing within a reasonable time after his guilt is established.

Burgess, 395 F. Supp. at 411 (emphasis added) (citation omitted).

adhering to the letter of the regulations while remaining cognizant of the due process concerns that drove the promulgation of Section 71.4." Id. at 1080.

The Board in Jacobs argued that the sentence proceeding "would not have necessarily notified the Board of Jacobs' new conviction." Id. at 1081. This Court thereafter considered the language of the sentencing order, relied upon by the parole agent as official verification of the new conviction, and compared it to what the trial court stated on the record at the sentence proceeding. This Court held that "[g]iven the identical language, the sentence proceeding should have made the Board as aware of Jacobs' new conviction as the Board argues the sentence order did." Id. at 1081. The Court considered:

> whether, when apparently supplied with actual notice that a parolee has been convicted, which notice is worded identically to the "official verification" eventually obtained by the parolee's supervising parole agent, the Board may refrain from conveying that information to the supervising parole agent and wait an indeterminate amount of time before the parole agent is somehow notified of the new conviction so that he may formally retrieve "official verification" before the time within which a revocation hearing begins to run.

Id. at 1082.

Though the facts of Jacobs differ from the instant case in some respects, its reasoning is helpful. As in Jacobs, here it is also troubling that the Board had notice of Fumea's conviction, but failed to act on that notice, despite the representative of the Board actually in attendance at his sentencing and the warrant issued on the date of his sentencing. It is, therefore, evident, as in Jacobs, that the Board received notice of Fumea's new conviction before it obtained "official verification" of that conviction and **before** Fumea entered into federal custody following the sentencing hearing. Instead of asserting its jurisdiction over Fumea

14

prior to his sentencing or at the sentencing hearing so that he would serve his sentences in the order statutorily prescribed, the Board made no effort to comply with Section 6138(a)(5.1). Had the Board done so, Fumea would have been returned to the Board's custody, and the revocation hearing would have been held before, instead of after, he served his entire federal sentence. The only justification given by the Board for not treating the notice it received as an "official verification" is the definition of that term in its regulation, 37 Pa. Code § 61.1.

The rules and regulations for Arrest and Hearing for Parole Violators were adopted in 1972. In 1977, the Board amended Section 71.4, which had previously provided that "[t]he hearing shall be held within thirty days of notification of imposition of sentence,"[11] to instead require that a parole revocation hearing "be held within 120 days from the date the Board received official verification of . . . the guilty verdict . . . ." See 7 Pa. B. 490 (Feb. 19, 1977). The definition for "official verification" was added to Section 61.1 when the title of that section was changed from "Definition of 'Board'" to "Definitions." See Proposed Rulemaking, 17 Pa. B. 3890-91 (Oct. 3, 1987). Defense attorneys suggested that the definition of "official verification" should include written notice from the parolee's counsel that the parolee has been convicted. 18 Pa. B. 251 (Jan. 16, 1988). However, the Board responded that "**such notice would not constitute proof of the conviction,**" and that, "if written notice from the parolee's counsel triggered the 120-day period, **the Board would be required in some cases to hold a revocation hearing before it could acquire the court documents needed to prove the conviction**." Id. (emphasis added).

---

[11] Board Rules for Arrest and Hearing for Parole Violators, Section IV., A. (adopted 1972); see 2. Pa. B. 1468. Section IV., A. subsequently became 37 Pa. Code § 71.4.

Echoing this concern, this Court subsequently explained that:

> it is reasonable for the 120-day period . . . to begin to run on the date that the Board receives official verification of a parolee's conviction, because, **to hold otherwise, would impose on the Board the Herculean task of searching the dockets of every court of record in the United States on a daily basis to discover when a parolee was convicted**.

Lee v. Pa. Bd. of Prob. and Parole, 596 A.2d 264, 265 (Pa. Cmwlth. 1991) (emphasis added). The regulations were thus intended to protect the due process rights of a parolee without overburdening the Board with the task of manually searching dockets for the necessary proof of conviction, an understandably Herculean task before the age of email, digital documents and online dockets.[12]

Importantly, in 2010, the General Assembly enacted Section 6138(a)(5.1), which now provides that new terms of total confinement ordered by Federal courts and courts of other jurisdictions **shall** be served **after** a parolee first serves his backtime. Now, the Board's delay in acquiring the "official verification" or its inaction at a parolee's sentencing, as occurred here, can render Section 6138(a)(5.1) a nullity, thus defeating the legislative intent.

We have, in the past, interpreted and applied the regulation as necessary to protect the due process rights of parolees without overburdening the Board. See, e.g., Jacobs, 24 A.3d at 1079-80 (holding that revocation hearing not timely held

---

[12] However, in this case, it is beyond dispute that the Board's agent was notified of Fumea's new conviction and even personally attended the sentencing proceeding associated with that conviction. Thus, in this case, the concerns about the burden on the Board, which justified the definition of "official verification," are not present. Moreover, we note that technological advances allow for the electronic acquisition of court documents at one's computer.

16

where the Board had actual notice of the conviction before sentencing, but could not explain the delay between conviction and receipt of official verification); Ramos v. Pa. Bd. of Prob. and Parole, 954 A.2d 107, 109 (Pa. Cmwlth. 2008) (stating that "if there is a delay between the time the Board has notice of the conviction and the time when the Board receives official verification of the conviction, the Board has the burden of proving that the delay was not unreasonable and unjustifiable"); Fitzhugh v. Pa Bd. of Prob. and Parole, 623 A.2d 376, 380 (Pa. Cmwlth. 1993) (rejecting "the notion that a parolee convicted of a new offense may be forced to wait for an unreasonable period for a revocation hearing until the Board chooses to retrieve his records, even though the Board has actual notice of the new conviction"); Williams v. Pa. Bd. of Prob. and Parole, 579 A.2d 1369, 1371-72 (Pa. Cmwlth. 1990) (holding that where there is no official verification, the 120-day period begins to run from the time the Board **could have obtained** official verification). Creating an exception to the requirement of receipt of "official verification" of a conviction, under these unique facts, similarly effectuates both the purposes of the regulations **and** the General Assembly's intent as set forth in Section 6138(a)(5.1) of the Parole Code.

Because the Board has offered no clear explanation supported by substantial evidence of record as to why it failed to take custody of Fumea while Fumea was still available to the Board at or before his federal sentencing, when it was undeniably aware of the conviction, an agent attended his sentencing, and the Board issued its detainer on the date of sentencing, we conclude that Fumea's

revocation hearing was not timely held, the appropriate remedy for which is dismissal of the parole violation charges.[13]

Accordingly, the Decision of the Board is reversed, and the case is remanded to the Board for dismissal of Fumea's parole violation charges.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[13] In Jacobs, we reiterated that "[u]nreasonable and unjustifiable delays which are not attributable to the parolee or his counsel do not toll the running of the 120 days." Jacobs, 24 A.3d at 1080 (quoting Williams v. Pa. Bd. of Prob. and Parole, 579 A.2d 1369, 1372 (Pa. Cmwlth. 1990)).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wayne Fumea,                        :

            Petitioner       :

                       :

         v.                :    No. 1551 C.D. 2015

                       :

Pennsylvania Board of Probation     :

and Parole,                      :

            Respondent    :

# O R D E R

**NOW**, September 16, 2016, the August 11, 2015 Decision of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is hereby **REVERSED,** and the case is **REMANDED** to the Board for dismissal of Wayne Fumea's parole violation charges with prejudice.

Jurisdiction relinquished.

_____

**RENÉE COHN JUBELIRER,** Judge