# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ralph A. Ochsenhirt,                          :
                Petitioner    :
                              :
         v.                    :    No. 1299 C.D. 2020
                              :    Submitted:  May 21, 2021
Pennsylvania Parole Board,                     :
              Respondent    :


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                  **HONORABLE CHRISTINE FIZZANO CANNON,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**           **FILED:  August 9, 2021**

     Ralph A. Ochsenhirt (Petitioner), pro se, petitions for review of the November 25, 2020 Order of the Pennsylvania Parole Board (Board), affirming its denial of Petitioner's administrative appeal from the Board's May 22, 2020 Decision that revoked Petitioner's parole, recommitted him as a convicted parole violator (CPV), ordered him to serve 60 months of backtime, denied him credit for time spent at liberty on parole, and recalculated his maximum sentence date from April 21, 2015, to May 16, 2030.  On appeal, Petitioner argues that the Board's recommitment and recalculation of his sentence violated his rights to due process and to be free from cruel and unusual punishment.  After review, we affirm.

## I. BACKGROUND

Petitioner is currently incarcerated at the State Correctional Institution at Pine Grove where he is serving a 7- to 20-year aggregate sentence for 2 counts of robbery committed in 1978 and 1981. (Certified Record (C.R.) at 2.) On June 23, 2004, the Board paroled Petitioner, and he was released from custody on August 9, 2004. (*Id.* at 4-7.) At the time, Petitioner's maximum sentence date was April 21, 2015. On November 21, 2005, Petitioner was arrested on four counts of federal bank robbery by the Federal Bureau of Investigation. (*Id.* at 21, 28.) On the same date, the Board issued a Warrant for Arrest of Paroled Prisoner. (*Id.* at 12.) The Warrant stated: "Although offender's original maximum sentence was 4/21/2015, the maximum sentence is being extended due to a period of delinquency and a new conviction. The new maximum sentence will be computed upon recording of the Board's final action. Offender owes approximately 10 years, 8 months, and 12 days." (*Id.*) On February 20, 2007, Petitioner was sentenced in the United States District Court for the Northern District of Mississippi to 170 months in the federal prison system. (*Id.* at 14, 23, 28.)

On May 26, 2008, while serving his federal sentence, Petitioner wrote a letter to the Board requesting a parole violation hearing with the Board. (*Id.* at 19.) In this letter, Petitioner wrote:

> I am writing today to ask [the Board] what I need to do to have a parole violation hearing in [absentia]. I am currently serving a federal sentence of 194 months.[1] My tentative release date is 1-04-2020. I have been informed by the Records Dep[artment] here at [the federal

---

[1] As explained at the hearing before the Board, he received a 170-month sentence for the federal offenses, which was in addition to 24 months for a consecutive sentence for his violation, for a total of 194 months. (C.R. at 44-45.)

prison] that [the Board has] placed a detainer against me on 4-02-2008[2] for violation of my parole[.]

What must I do to ask [the Board] for a hearing in abs[entia]?

(*Id.*) On June 9, 2008, the Board responded by letter, explaining that a hearing would be scheduled once Petitioner was returned to Pennsylvania custody and therefore was "available for a Board action." (*Id.* at 20.) The Board further indicated that Petitioner "must be present at this hearing so the Board can hear directly from [him] the circumstances surrounding [his] new charges." (*Id.*) Upon finishing his federal sentence on September 19, 2019, the Board executed its detainer warrant and extradited Petitioner to Pennsylvania. (*Id.* at 37, 76, 79.) On October 16, 2019, the Board issued a Notice of Charges and Hearing. (*Id.* at 21.) A revocation hearing was held on January 8, 2020, at which counsel appeared on Petitioner's behalf. (*Id.* at 38-40.) The Board issued its Notice of Board Decision recorded on May 1, 2020, and mailed on May 22, 2020, recommitting Petitioner as a CPV and directing him to serve 60 months of backtime. (*Id.* at 82.) The Board denied Petitioner credit for time spent at liberty on parole noting that his new conviction was similar to the original offense, Petitioner absconded while on parole, and Petitioner has a history of supervision failures. (*Id.* at 83.) Petitioner's new maximum sentence date was recalculated as May 16, 2030. (*Id.*)

Petitioner then filed an administrative appeal with the Board, challenging the May 22, 2020 Decision on the bases that the Board had no jurisdiction over Petitioner because his maximum sentence date expired on April 21, 2015, and that the Board's denial of his 2008 letter request for a revocation hearing and subsequent

---

[2] While Petitioner stated in this letter that the Board issued the detainer on April 2, 2008, the Certified Record indicates that the Board lodged the detainer on November 21, 2005. (C.R. at 12, 58, 97.)

3

detainment of Petitioner five years after this previous maximum sentence date expired operated to deny him due process, violated double jeopardy, and constituted cruel and unusual punishment. The Board then issued its November 25, 2020 Order, denying Petitioner's administrative appeal. The Board stated it recommitted Petitioner as a CPV as a result of his new federal convictions. It further explained that "[t]here [was] no indication that [Petitioner] waived [his] right to a panel hearing prior to [Petitioner's] return to" Pennsylvania custody and that "the Board has authority to recommit a reentrant for an offense that occurs while on parole regardless of when the detainer is lodged or when conviction occurs[,]" as "[t]he controlling factor is when the reentrant committed the offense." (*Id.* at 96 (citing Section 6138(a)(2) of the Prisons and Parole Code, 61 Pa.C.S. § 6138(a)(2),[3] and *Choice v. Pa. Bd. of Prob. & Parole*, 357 A.2d 242 (Pa. Cmwlth. 1976)).) Finally, the Board discussed its authority to recalculate a CPV's maximum sentence date to reflect that the CPV was to receive no credit for time spent on liberty on parole under 61 Pa.C.S. § 6138(a)(2) and that it denied Petitioner credit on this basis. (*Id.* at 97.) Petitioner now petitions this Court for review.[4]

---

[3] Section 6138(a)(2) provides:

> If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and . . . shall be given no credit for the time at liberty on parole.

61 Pa.C.S. § 6138(a)(2).

[4] Our scope of review in probation and parole revocation proceedings "is limited to a determination of whether necessary findings are supported by substantial evidence, [whether] an error of law was committed, or whether constitutional rights of the parolee were violated." *Johnson v. Pa. Bd. of Prob. & Parole*, 706 A.2d 903, 904 (Pa. Cmwlth. 1998); 2 Pa.C.S. § 704.

## II. DISCUSSION

On appeal, Petitioner raises two issues for our review. First, Petitioner argues that the Board denied him due process of law in violation of the Fourteenth Amendment to the United States Constitution[5] by denying him a parole revocation hearing in absentia in response to his 2008 letter request. To this point, relying on 37 Pa. Code §§ 71.2, 71.4, Petitioner argues that the Board improperly indicated to him in its response to his 2008 letter request that he had to be present at the revocation hearing. Additionally, Petitioner asserts that the Board's statement that "[t]here [wa]s no indication that [Petitioner] waived [his] right to a panel hearing prior to [his] return to" Pennsylvania custody was in error. (Petitioner's Brief (Br.) at 8 (quoting the Board's November 25, 2020 Order).) Petitioner asserts that he waived his right to be present in this letter and, by refusing to grant him a hearing in absentia, the Board violated his due process rights. Petitioner further maintains that the Board lacked authority over him after his April 21, 2015 maximum sentence expired and, therefore, that the Board erred in holding the revocation hearing in 2020, some 15 years after the violation at issue and 5 years after the expiration of his previous maximum sentence date.

Second, Petitioner argues that the Board's refusal to hold the revocation hearing in 2008 and its subsequent recommitment in 2020 violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.[6] Petitioner maintains that the Board's refusal to grant his 2008 letter request combined with the Board "ma[king] [Petitioner] wait 15 years" after

---

[5] Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part: "No State shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1.

[6] The Eighth Amendment to the United States Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

his violation "to adjudicate a simple legal process of a parole revocation hearing of which [Petitioner] was willing to waive his appearance" amounts to cruel and unusual punishment, as he had to wait this time "under constant stress and worry" from "not knowing how long a sentence he would eventually have to serve." (*Id.* at 8-9.) Petitioner asserts that "[t]here is nothing more cruel for an inmate serving his sentence [than] not knowing when he will be getting out or released[,]" as "[h]is future is continuously on hold." (*Id.*) Accordingly, Petitioner requests that we reverse the Board's Order that affirmed the denial of his administrative appeal from the Board's recommitment order, hold that his sentence has been served in full, and order his release from custody.

In response, the Board argues that it did not violate Petitioner's constitutional rights by waiting for his return to Pennsylvania custody prior to conducting revocation proceedings. First, the Board points to the fact that Petitioner "is without any caselaw to support his arguments" and asserts that such arguments, therefore, "should be rejected." (Board's Br. at 7 (citing *Gaito v. Pa. Bd. of Prob. & Parole*, 412 A.2d 568 (Pa. 1980)).) Regardless, the Board maintains that not holding the revocation hearing in 2008 did not violate any of Petitioner's due process rights and that Petitioner was not prejudiced by waiting. Looking to the 2008 letter request, the Board argues that Petitioner did not expressly waive his right to be present at a hearing but only inquired as to how he could have a parole hearing in absentia. Accordingly, the Board posits that there was no "implied waiver of a future unscheduled hearing" and "the facts do not demonstrate any due process denied nor any prejudice suffered." (*Id.* at 8.)

The Board also argues that Petitioner is relying on an inapplicable regulation with respect to 37 Pa. Code § 71.2, which the Board argues only concerns undetained

6

parolees. Instead, the Board contends that 37 Pa. Code § 71.5 is the relevant regulation, as it concerns parolees detained in federal custody and permits the Board to defer any revocation hearing until the parolee has been returned to Pennsylvania custody. Therefore, the Board argues that it acted within its discretion by waiting until Petitioner was returned to Pennsylvania custody to hold the revocation hearing in this case. Finally, the Board asserts that "[a]ny harm of stress due to delay of parole proceedings and the unknown for 11 years was not the result of any action by the [Board] but the actions of [Petitioner] when he committed 4 bank robberies out of state while on parole." (*Id.* at 9.)

In Petitioner's Reply Brief, he asserts that his 2008 letter request was clearly intended to be a request for a hearing and that the Board misled him by informing him that he must be present at the hearing. Petitioner then relies on *Patton v. Pennsylvania Board of Probation and Parole* (Pa. Cmwlth., No. 175 C.D. 2020, filed November 20, 2020), arguing that "it is apparent when reading the Court's decision that the Board let [the petitioner] waive his right to appear at his revocation hearing . . . while he was still in federal custody." (Petitioner's Reply Br. at 1-2.) Because the Board did not allow him to do the same, Petitioner argues, the Board violated his right to due process and against cruel and unusual punishment.

The Board has the exclusive power "[t]o parole and reparole, commit and recommit for violations of parole and to discharge from parole" a criminal defendant sentenced to a term of at least two years. 61 Pa.C.S. § 6132(a)(1)(i); *Fross v. County of Allegheny*, 20 A.3d 1193, 1196 n.3 (Pa. 2011). Following a decision from the Board, a criminal defendant has the right to file an administrative appeal. Section 6113(d)(1) of the Prisons and Parole Code, 61 Pa.C.S. § 6113(d)(1). After a parolee exhausts his available administrative appeals, he may then appeal to this Court,

7

which has exclusive jurisdiction over appeals from the Board's decisions. Section 763(a) of the Judicial Code, 42 Pa.C.S. § 763(a).

Looking first to Petitioner's due process claim, Section 71.2(13)(ii) of the Board's regulations explains that a "parolee has the right to be present during the entire [parole violation hearing], unless the parolee **expressly** waives that right[.]" 37 Pa. Code § 71.2(13)(ii) (emphasis added). Petitioner asserts that "when he wrote the Board in 2008 requesting a hearing in absent[ia,] he . . . waive[d] his right to appear at his hearing." (Petitioner's Br. at 7.) In the letter, Petitioner stated that he was writing "to ask [the Board] what he need[ed] to do to have a parole violation hearing in abs[sentia]." (C.R. at 19.) Our Supreme Court has explained that

> [a] waiver in law is the act of intentionally relinquishing or abandoning some known right, claim[,] or privilege. To constitute a waiver of legal right, there must be a **clear, unequivocal[,] and decisive act** of the party with knowledge of such a right and an evident purpose to surrender it.

*Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962) (emphasis added). Analyzing the letter and the statements therein from Petitioner, it cannot be said that Petitioner's inquiring as to what Petitioner needed to do to have the parole violation hearing "in absent[ia]" constitutes a "clear, unequivocal[,] and decisive" waiver of his right to a parole revocation hearing. *Id.* Accordingly, we agree with the Board that Petitioner's 2008 letter request did not contain an explicit waiver of a revocation hearing. (C.R. at 19.)

As to the crux of Petitioner's due process claim, Petitioner argues that the Board misled him by informing Petitioner that he must wait to be returned to Pennsylvania custody and that forcing him to wait for the hearing violated due process. We disagree. The Board was required to hold the parole revocation hearing

8

within 120 days of Petitioner's return from federal custody. 37 Pa. Code § 71.4(1)(i). Here, the Board held the revocation hearing 110 days after Petitioner returned to Pennsylvania custody. Thus, it appears the Board satisfied its initial burden. Section 71.5 of the Pennsylvania Code provides: "If the parolee is in custody in another state, or **in Federal custody**, the Board may lodge its detainer **but other matters may be deferred until the parolee has been returned to a State correctional facility in this Commonwealth.**" 37 Pa. Code § 71.5(a) (emphasis added). This Court addressed a similar argument to the instant one raised by Petitioner in *Krantz v. Pennsylvania Board of Probation and Parole*, 698 A.2d 701 (Pa. Cmwlth. 1997). In *Krantz,* the petitioner argued that the Commonwealth's decision to exercise its discretion under Section 71.5 and not return the petitioner to the Commonwealth upon discovery of a new criminal conviction while the petitioner was in custody in another state violated his due process rights. We concluded that there was no due process violation, as Section 71.5 explicitly provides the Board with the discretion to lodge its detainer but defer other matters until the petitioner was returned to Pennsylvania custody.

Similar claims have been rejected by the federal courts, as well. For instance, in *Sellers v. Pennsylvania Board of Probation and Parole* (E.D. Pa., No. 19-4666, filed September 23, 2020), 2020 WL 8968104,[7] the United States District Court for the Eastern District of Pennsylvania considered a due process challenge in the form of a *habeas corpus* petition where the petitioner was on parole when he was arrested and convicted on federal charges. The Board placed a detainer on the petitioner as a result, and, before the federal court, the petitioner argued that the Board's decision not to provide him with a revocation hearing as a result of his federal conviction

---

[7] While not binding, decisions from the federal district and circuit courts may be cited for their persuasive value. *Edinger v. Borough of Portland*, 119 A.3d 1111, 1115 (Pa. Cmwlth. 2015).

9

violated due process. The district court explained that this claim lacked merit because Section 71.5 explicitly provided the Board with **the discretion** to defer the revocation proceeding until the petitioner was returned to Pennsylvania custody. And because "[t]he [United States] Supreme Court ha[d] rejected similar claims that a parolee's due process rights were violated when he or she had to wait to complete a sentence before having a parole violation hearing," the district court held there was no due process violation. *Id.* at \*3 (citing *Moody v. Dagget*, 429 U.S. 78, 89 (1976) (holding that there is no due process protection requiring a revocation hearing be held "before the parolee is taken into custody as a parole violator")); *see also Costello v. Warden of S.C.I. Huntington* (E.D. Pa., No. 15-2636, filed March 28, 2016), 2016 WL 1579958 at \*7 (explaining that the Supreme Court "ma[de] clear that the issuance of a parole violation detainer does not deprive an inmate of any constitutionally protected rights because the Board is not required to provide a revocation hearing until the inmate is returned to state custody").

In the present case, there is no due process violation where the Board exercises its discretion under Section 71.5(a) to defer a parolee's revocation hearing until his return to Pennsylvania custody. *Moody*, 429 U.S. at 86; *Krantz*, 698 A.2d at 701. While Petitioner interprets the Board's response to his 2008 letter request for a hearing to be misleading, the Board was simply exercising its discretion to defer such a proceeding until Petitioner had been returned to Pennsylvania custody— discretion that it has explicitly been granted under Section 71.5(a) of the Board's regulations. 37 Pa. Code § 71.5(a). Because due process does not require a revocation hearing be held "before the parolee is taken into custody as a parole violator," *Moody*, 429 U.S. at 86, Petitioner's due process claim lacks merit.

We now turn to Petitioner's second issue, in which he argues that the Board's refusal of his 2008 letter request and the Board's subsequent detainer of Petitioner after his previous maximum sentence date expired constituted cruel and unusual punishment under the Eighth Amendment. We again disagree.

Our Supreme Court has explained:

> Just what constitutes cruel and unusual punishment in the constitutional sense is a matter which defies concrete definition. However, it has long been understood that the concept of cruel and unusual punishment is one of wide application, capable of acquiring new depths of meaning to conform to more enlightened concepts of criminal justice.

*Com. ex rel. Bryant v. Hendrick*, 280 A.2d 110, 116 (Pa. 1971). Speaking to the spirit of the Eighth Amendment, the United States Supreme Court has stated:

> The exact scope of the constitutional phrase "cruel and unusual" has not been detailed by this Court. But the basic policy reflected in these words is firmly established in the Anglo-American tradition of criminal justice. The phrase in our Constitution was taken directly from the English Declaration of Rights of 1688, and the principle it represents can be traced back to the Magna Carta. The basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards. Fines, imprisonment[,] and even execution may be imposed depending upon the enormity of the crime, but any technique outside the bounds of these traditional penalties is constitutionally suspect. This Court has had little occasion to give precise content to the Eighth Amendment, and, in an enlightened democracy such as ours, this is not surprising. But when the Court was confronted with a punishment of 12 years in irons at hard and painful labor imposed for the crime of falsifying public records, it did not hesitate to declare that the penalty was cruel in its excessiveness and unusual in its character. The Court recognized in [*Weems v. United States*, 217 U.S. 349 (1910),] that the words of the Amendment are not precise, and that their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.

11

*Trop v. Dulles*, 356 U.S. 86, 99-101 (1958) (citations and notations omitted).

Looking to actions by the Board in regard to parolees' rights, it is well settled that the rule providing that "parolees convicted of crimes while on parole shall not be given credit for street time[] has withstood [] constitutional challenges in both federal and state appellate courts," including claims of cruel and unusual punishment. *Monroe v. Pa. Bd. of Prob. & Parole*, 555 A.2d 295, 296 (Pa. Cmwlth. 1989) (citing *United States ex rel. Lawson v. Cavell*, 425 F.2d 1350 (3d Cir. 1970); *Gaito*, 412 A.2d at 568; *Jezick v. Pa. Bd. of Prob. & Parole*, 530 A.2d 1031 (Pa. Cmwlth. 1987)).

Furthermore, the Board may extend a maximum sentence date after its expiration where the parolee is convicted of a new crime committed while on parole. Section 6138(a)(1) of the Prisons and Parole Code provides that a parolee who is convicted of a crime punishable by imprisonment "may at the discretion of the [B]oard be recommitted as a" CPV. 61 Pa.C.S. § 6138(a)(1). Further, Section 6138(a)(2) states that upon such recommitment, "the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and . . . shall be given no credit for the time at liberty on parole." 61 Pa.C.S. § 6138(a)(2). "It is well-settled law that the Board retains jurisdiction to recommit an individual as a [CPV] **after the expiration of the maximum** term, so long as the crimes that lead to the conviction occurred while the individual is on parole." *Miskovitch v. Pa. Bd. of Prob. & Parole*, 77 A.3d 66, 73 (Pa. Cmwlth. 2013) (citations omitted). A similar situation to the case *sub judice* was presented in *Fumea v. Pennsylvania Board of Probation and Parole*, 147 A.3d 610 (Pa. Cmwlth. 2016). There, the parolee was originally sentenced to serve 5 to 10 years in a state correctional facility, with a maximum sentence date of December

12

13, 2009. After being released on parole, the parolee was arrested by federal authorities on January 29, 2008. On November 11, 2011, the parolee received a federal sentence of 41 months, at which time the Board issued a detainer warrant. Upon his release from federal custody on December 24, 2014 —five years after the expiration of his original maximum sentence date—the Board took custody of the parolee, held a revocation hearing, recommitted him as a CPV, and recalculated his maximum sentence date as March 17, 2023. We held that, "[p]ursuant to Section 6138(a)(1), because [the parolee] was convicted for a crime that he committed while on parole, **the Board retained jurisdiction to recommit him even after the expiration of his maximum [sentence] date**[.]" *Id.* at 615 (emphasis added).

It follows, then, in light of the Board's discretion to defer revocation proceedings until a parolee is returned to Commonwealth custody discussed above, that an exercise of such discretion does not constitute cruel and unusual punishment merely because the parolee is being detained beyond a previous maximum sentence date, as the Board retains jurisdiction to do so. *Fumea*, 147 A.3d at 615; *Miskovitch*, 77 A.3d at 73. Just as the Board's refusal to give credit for street time, which necessarily requires a recalculation of the parolee's maximum sentence date as a result of a parole violation, does not constitute cruel and unusual punishment, the Board's decision to extend a maximum sentence date upon a parolee's return to custody after federal incarceration does not violate the Eighth Amendment, either. Indeed "the dignity of man" is not offended by doing so because, as in this case, it is the parolee's conduct in committing new crimes while on parole that results in the parolee's extended incarceration. *Trop*, 356 U.S. at 100. Accordingly, Petitioner's Eighth Amendment right against cruel and unusual punishment was not violated.

13

## III. CONCLUSION

Based on the foregoing, we affirm the Board's Order that affirmed the denial of Petitioner's administrative appeal from the Board's May 22, 2020 Decision.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ralph A. Ochsenhirt,            :
            Petitioner     :
                        :
        v.           :   No. 1299 C.D. 2020
                        :
Pennsylvania Parole Board,  :
           Respondent  :

# **O R D E R**

**NOW**, August 9, 2021, the Order of the Pennsylvania Parole Board in the above-captioned matter is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge