IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimn Booth, :  
      Petitioner :  
          :  
     v. : No. 489 C.D. 2025
          : Submitted: February 3, 2026
Pennsylvania Parole Board, :  
      Respondent :  

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER    FILED: February 25, 2026

 Kimn Booth petitions for review of the Order of the Pennsylvania Parole Board (Board) that denied Booth's Petition for Administrative Review (Petition) and upheld the Notice of Decision recommitting Booth as a Convicted Parole Violator (CPV) to serve the unexpired term of his original sentence and recalculating his parole violation maximum date to April 6, 2026, based upon new convictions in federal court. On appeal, Booth argues the Board erred because he should have completed serving his state sentence before serving his federal sentence, it failed to give him credit on his state sentence for time served on the federal sentence in accordance with the federal court's sentencing instructions, and in recommitting him as a CPV. Upon review, we affirm.

## I. BACKGROUND

 On November 5, 2014, the Board released Booth on parole from his three-year to six-year sentence for convictions of Possession with Intent to Deliver and Person not to Possess Firearm. (Certified Record (C.R.) at 1, 4.) At the time of his

parole, Booth's maximum date was December 5, 2018, and he had 1,483 days remaining on his sentence. (*Id.* at 4.)

Booth was arrested by federal authorities on June 12, 2017, and charged federally with multiple drug-related charges, including Possession with Intent to Distribute Narcotics (Heroin and Fentanyl). (*Id.* at 17.) As of that date, Booth had 540 days remaining on his state sentence. He was preliminarily detained in the custody of the United States Marshals by order dated June 13, 2017. (*Id.* at 52.) The Board issued a Warrant to Commit and Detain (Warrant) Booth on June 15, 2017. (*Id.* at 8.) The Board declared Booth delinquent as of June 12, 2017, the date of his federal arrest, on December 7, 2018. (*Id.* at 9.) The Board cancelled its Warrant on December 26, 2018. (*Id.* at 10.) Booth waived his federal detention hearing, he was ordered detained, and he did not post bail on the federal charges. (*Id.* at 17, 58.) Booth was confined at "NEOCC," which is the North Eastern Ohio Correctional Center. (*Id.* at 19.)

On October 16, 2019, Booth pled guilty in federal court to violating multiple sections of the Federal Crimes Code, specifically, to two counts of Possession with Intent to Distribute Narcotics and one count of conspiracy to do so, 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), 846. (C.R. at 22.) That same day, a Judge in the United States District Court for the Western District (District Court) sentenced Booth to a term of imprisonment in the Federal Bureau of Prisons (FBP) of 120 months for each count, to run concurrently. (*Id.* at 23.) The federal sentencing order provides additional recommendations to the FBP, including that Booth "be granted credit for time served in presentence custody, to the extent he is eligible," and makes no reference to Booth's state sentence (*Id.* at 23-28.)

2

The Board issued a second Warrant for Booth on November 5, 2019. (*Id.* at 11.) On October 15, 2024, Booth was released from Federal Correctional Institution, Loretto to Board agents, and the Board issued an order for transport of Booth to the State Correctional Institution (SCI) Smithfield. (*Id.* at 12, 19, 50-51.) The Board issued a Notice of Charges and Hearing on October 21, 2024, based on Booth's federal convictions, which Booth signed the same day. (*Id.* at 13.) Also on that day, Booth waived his rights to a panel hearing, to a revocation hearing, and to counsel, and admitted to the new federal convictions. (*Id.* at 15-16.)

Based on the records obtained from the District Court, the Board issued a Notice of Decision, recorded on November 27, 2024, recommitting Booth as a CPV to serve the remainder of his unexpired term because the "new charges [were] serious/assaultive" and he was "considered a threat to the safety of the community." (*Id.* at 72.) The Board gave Booth credit for his time spent at liberty on parole in good standing, also known as street time, and set Booth's parole violation maximum date as April 6, 2026. (*Id.* at 72-73.) In its Order to Recommit, the Board calculated Booth's parole violation maximum date as follows: he had 1,491 days remaining on his sentence when he was paroled on November 5, 2014, from which the Board subtracted 953 days for his street time credit (November 5, 2014, to June 15, 2017), resulting in him having 538 days remaining on that sentence. (*Id.* at 69.) The Board gave no credit for any confinement time. (*Id.*) Adding 538 days to Booth's return to custody date of October 15, 2024, resulted in the new parole violation maximum date of April 6, 2026. (*Id.*)

Booth, via counsel, filed the Petition, raising the issues he now argues to the Court, which the Board denied. (*Id.* at 74.) The Board acknowledged that Section 6138(a)(5.1) of the Prisons and Parole Code (Code), 61 Pa.C.S. § 6138(a)(5.1),

3

requires that an inmate who is released from an SCI and receives a new sentence to be served at a federal facility should serve the original state sentence first, but for this to occur, the federal facility has to surrender the parole violator to Pennsylvania custody. (*Id.* at 76.) The Board explained it does not control the movements of federal inmates, nor does it have the means or authority to force the return of an inmate from federal prison. Thus, in these circumstances, Booth became available to serve his state sentence upon completion of the federal sentence on October 15, 2024. (*Id.*) The Board further explained that it considered Booth's new charges "serious/assaultive" justifying his recommitment as a CPV, because the drug-related charges were serious. (*Id.* at 77.) It stated that "Booth is considered a threat to the safety of the community because he was selling a Heroin/Fentanyl mix to people in the community. This could potentially harm anyone using or buying these drugs." (*Id.*) Accordingly, the Board affirmed the Notice of Decision, and Booth now petitions this Court for review.[1]

## II. DISCUSSION

### A. The Order of Service of Booth's State and Federal Sentences

Booth first argues that the Board's Order should be reversed because, pursuant to Section 6138(a)(5.1) of the Code, he should have completed the balance of his initial state sentence before he began serving his federal sentence. Booth relies on *Fumea v. Pennsylvania Board of Probation and Parole*, 147 A.3d 610 (Pa. Cmwlth. 2016), arguing that in that matter this Court dismissed the parole violation charges against a parolee because the Board failed to assert jurisdiction over the parolee at

---

[1] In reviewing the Board's Order, we are to determine "whether the decision was supported by substantial evidence, whether an error of law occurred[,] or whether constitutional rights were violated." *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1023 n.5 (Pa. Cmwlth. 2017) (quoting *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008)).

his federal sentencing so as to ensure the statutory order of sentences was complied with. (Booth's Brief (Br.) at 12-14.) The same result should occur here, according to Booth, because the Board has not provided an explanation as to why it did not assert its jurisdiction over him before being taken into federal custody. (*Id.* at 14.)

The Board responds that it properly recommitted Booth as a CPV based on Booth's own admissions, and that his admission and waiver of his hearing rights resulted in a waiver of any challenge to the recommitment based on his admitted new conviction. (Board's Br. at 7-8 (citing, e.g., *Fisher v. Pa. Bd. of Prob. & Parole*, 62 A.3d 1073 (Pa. Cmwlth. 2013)).) The Board further argues that even if this issue is not waived, *Fumea* is distinguishable. (*Id.* at 8-9.) The Board also asserts this Court has rejected arguments that the Board has an obligation to obtain a parolee from federal custody to conduct a revocation hearing, holding that such parolee is considered unavailable until released from federal custody. (*Id.* at 9-10 (citing *Stroud v. Pa. Bd. of Prob. & Parole*, 196 A.3d 667 (Pa. Cmwlth. 2018); *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021 (Pa. Cmwlth. 2017)).)

Section 6138(a)(1) of the Code authorizes the Board to, "at its discretion, revoke the parole of a paroled offender if the offender, during the period of parole . . . , commits a crime punishable by imprisonment, for which the offender is convicted or found guilty . . . or to which the offender pleads guilty." 61 Pa.C.S. § 6138(a)(1). Booth's arguments are based on the language found in Section 6138(a)(5.1) of the Code, which states that "[i]f the offender is sentenced to serve a new term of total confinement by a Federal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1) the offender shall serve the balance of the original term before serving the new term." 61 Pa.C.S. § 6138(a)(5.1). Under

5

this provision, Booth maintains he **had** to serve his original term first, and the Board's failure to ensure that this occurred requires reversal of its Order.

The Board asserts this issue is waived, and, pursuant to our precedent, we are constrained to agree. Booth could have raised the issue of the order of his sentences during the parole revocation hearing, but he waived his right to a revocation hearing and admitted to his new federal convictions. Under the Court's precedent, Booth's "waiver of [his] right to a hearing necessarily encompasse[d] the right to advance claims of error he could have raised at the hearing." *Fisher*, 62 A.3d at 1075-76. Therefore, Booth has waived this issue. *Id.*

Even if the issue was not waived, Booth's arguments would be unavailing. First, *Fumea* is distinguishable. In that case, the parolee had posted bail on his federal charges and, therefore, was not in federal custody at the time of his federal sentencing, and a Board agent was present at that sentencing and could have taken the parolee into custody but did not. *Fumea*, 147 A.3d at 611-12, 616. Because the Board's agent did not assert jurisdiction, the federal court directed that the parolee be entered into federal custody after sentencing instead. *Id.* at 612. We held that, based on the circumstances in *Fumea*, the parolee's revocation hearing was untimely because the Board could not explain why its agent did not take the parolee into custody. *Id.* at 616. There is nothing in this record that suggests that Booth was not in federal custody until his release to Board agents on October 15, 2024, or that the Board had an agent present at Booth's federal sentencing hearing to at least try to assert the Board's jurisdiction. In *Brown*, we rejected a parolee's argument based on *Fumea* because, like Booth here, the parolee was in federal custody before and after his federal sentencing. *Brown*, 184 A.3d at 1027. Accordingly, *Fumea* does not support Booth's position.

6

Second, this Court has rejected the argument that the Board has an obligation, let alone the authority, to acquire a parolee from federal custody in order to serve the state sentence first, noting that there was no legal authority giving the Board the ability to do so. *Stroud*, 196 A.3d at 673-74; *Brown*, 184 A.3d at 1027. *See also Dill v. Pa. Bd. of Prob. & Parole*, 186 A.3d 1040, 1046 (Pa. Cmwlth. 2018) ("Simply, there is no legal authority for the notion that the Board could or should 'pluck' [a parolee] from federal prison to hold a revocation hearing.") (citation omitted). In *Brown*, we noted that,

> under the [Board's] regulations, when a parolee is in federal custody, confined in a federal facility, or is otherwise unavailable, the Board's duty to hold a revocation hearing, or take other action beyond issuing a detainer, is deferred until the parolee is returned to a SCI regardless of when the Board received official verification of a parolee's new conviction.

*Id.*, 184 A.3d at 1025 (citing 37 Pa. Code § 71.5(a), (c)(1)). Here, the record shows that Booth did not post bail on his federal charges and, therefore, remained in federal custody until October 15, 2024. (C.R. at 17, 58.) Therefore, the Board's alleged failure to obtain Booth from federal custody is not a reason to reverse the Board's Order.

### B. Credit on State Sentence for Time Served on Federal Sentence

Booth next argues that the Board abused its discretion in not awarding him credit toward the state sentence for the time spent serving the federal sentence because the federal sentencing judge "indicated at the time of sentencing that her intention was for the [federal] sentence to be run concurrently with any state revocation sentence that might be imposed." (Booth's Br. at 15.) Had he been given

this credit, Booth asserts, his state sentence would have expired during the service of his federal sentence. (*Id.* at 16.)

The Board asserts that Booth's credit arguments must fail because they are based on a factual assertion that is not contained in this record and are contrary to the federal sentencing documents that are in the record. In particular, the Board points to the federal sentencing order which directs that the sentences for the three federal charges were to run concurrently but makes no reference to Booth's prior state sentence. (Board's Br. at 12-13.) Even if there was evidence to support Booth's factual averment, the Board argues his assertion would fail because awarding credit as requested would be contrary to Pennsylvania law, which explicitly prohibits a CPV from serving a new sentence and old sentence concurrently notwithstanding the existence of a sentencing order so requiring. (*Id.* at 13-14 (citing, e.g., *Dorian v. Pa. Bd. of Prob & Parole*, 409 A.2d 980, 981 (Pa. 1983); *Barnes v. Pa. Bd. of Prob. & Parole*, 203 A.3d 382, 395 (Pa. Cmwlth. 2019)).)

Booth relies on his contention that the federal sentencing judge intended for the federal sentence to run concurrently with his parole revocation and Section 6138(a)(2.1) of the Code, 61 Pa.C.S. § 6138(a)(2.1),[2] which generally authorizes the

---

[2] Section 6138(a)(2.1) states:

The [B]oard may, in its discretion, award credit to an offender recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:

> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence or a crime listed under 42 Pa.C.S. Ch. 97 Subch. H 1 (relating to registration of sexual offenders) or I 2 (relating to continued registration of sexual offenders).

**(Footnote continued on next page…)**

Board to, within its discretion, award credit toward a recommitted parolee's original sentence for the time spent at liberty on parole except under certain circumstances not relevant here. As the Board points out, however, there is nothing in **this record** that supports Booth's factual assertion regarding the federal sentencing judge's intent. Rather, Booth's federal sentencing order contains no mention of his state sentence and states that the sentences for his convictions on the **three federal charges** were to run concurrently. (C.R. at 23-28.) The federal sentencing order also recommended **to the FBP**, that Booth "be granted credit for time served in presentence custody, to the extent he is eligible," (*Id.* at 23.) Beyond the fact that there is no evidence in this record of what was said at Booth's sentencing hearing, there is a written sentencing order here, and it is the text of a written sentencing order, not statements made at the sentencing, that controls. *Commonwealth v. Borrin*, 80 A.3d 1219, 1226-27 (Pa. 2013). Thus, this is not a reason to reverse the Board's Order.[3]

### C. Booth's Revocation and Recommitment

Last, Booth argues the Board's reasons for revoking his parole and recommitting him as a CPV, that the new charges were "serious/assaultive," he was "not amenable to parole supervision," and that he was "considered a threat to the safety of the community," are not supported by the record. (Booth's Br. at 17.) The

---

(ii) The offender was recommitted under [S]ection 6143 [of the Code, 61 Pa.C.S. § 6143] (relating to early parole of offenders subject to Federal removal order).

61 Pa.C.S. § 6138(a)(2.1).

[3] Because there is no basis in the record for Booth's factual assertion regarding the federal sentencing judge's intent, we do not address the Board's alternate reason for rejecting Booth's argument.

record shows, Booth asserts, that he was paroled early, he had no prior revocations of parole, and that his new conviction was not "assaultive" in nature. (*Id.* at 17-18.)

The Board responds that Booth waived this argument pursuant to Pennsylvania Rule of Appellate Procedure 2119, Pa.R.A.P. 2119, and *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009), because he cites no legal authority in support thereof. The Board also argues, if the issue is considered, that it did not abuse its discretion in revoking Booth's parole and recommitting him. It explained its reasoning for finding Booth's new conviction to be "serious" and considered him a threat to the safety of the community in its Order, and those reasons support its decision. (Board's Br. at 10-11.)

Rule 2119(a) provides that "[t]he argument [section of a brief] shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). In *Johnson*, our Supreme Court explained that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." 985 A.2d at 924. While Booth has not provided legal citations to support his argument, we cannot say that he did not provide "any discussion," *id.*, on this issue because it is apparent that he believes the Board's determination was an abuse of discretion based on what is contained in the record. For this reason, we will not find the issue waived, but we do not find it persuasive.

Booth asserts the Board abused its discretion in ordering his recommitment. "[I]n reviewing the Board's discretionary acts, this Court will only overturn the

10

Board's actions where the Board acts in bad faith, fraudulently, capriciously or commits an abuse of its power." *Baldelli v. Pa. Bd. of Prob. & Parole*, 76 A.3d 92, 96 (Pa. Cmwlth. 2013). "Due to the broad discretionary powers granted the Board, we will only find that the Board made an arbitrary, capricious or unreasonable determination in the absence of substantial evidence in the record to support that determination." *Chapman v. Pa. Bd. of Prob. & Parole*, 484 A.2d 413, 418 (Pa. Cmwlth. 1984). Under this standard, we discern no abuse of discretion in the Board's recommitting Booth as a CPV to serve his unexpired term.

As the Board explained in its Order, it found Booth's new convictions on **three federal charges**, which relate to the **possession of, distribution of, and conspiracy to distribute Heroin**, a Schedule I controlled substance, **and a detectable amount of Fentanyl**, a Schedule II controlled substance, to be "serious." (C.R. at 77.) Even if these charges are not "assaultive,"[4] we cannot say the Board's finding that these charges are "serious" was arbitrary, fraudulent, capricious, unreasonable, or an abuse of power. *Baldelli*, 76 A.3d at 96; *Chapman*, 484 A.2d at 418. Booth's argument appears to be that a charge is only serious if it is also assaultive, but we are not persuaded by that logic. Nor can we say that the Board's determination that possession of, distribution of, and conspiring to distribute a mix of Heroin and Fentanyl to people constituted a threat to the safety of the community meets the abuse of discretion standard because such sale can cause harm to anyone using those drugs. (C.R. at 77.) Finally, that Booth had not previously been subjected to revocation proceedings or was in good standing on parole does not lessen the severity of his committing new, serious drug-related crimes that threatened the safety of the community or alter the conclusion that he was not

---

[4] A review of the record reflects that the phrase "serious/assaultive" is a checkbox used on the Hearing Examiner's Report as a reason for recommitting a parolee as a CPV. (C.R. at 43.)

11

amenable to parole where the new convictions were similar to Booth's original state conviction for possession with intent to deliver. (*See id.* at 3.)

### III. CONCLUSION

For the foregoing reasons, we discern no abuse of discretion or error of law in the Board's actions, and, therefore, we affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kimn Booth,                           :
                Petitioner      :
                           :
        v.                 :    No. 489 C.D. 2025
                           :
Pennsylvania Parole Board,    :
                Respondent   :

# **O R D E R**

**NOW**, February 25, 2026, the Order of the Pennsylvania Parole Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge